MONEX, INC.

v.

ANTHONY A. NUNES, INC., et al.

ROYAL DIVERSIFIED PRODUCTS, INC.

v

ANTHONY A. NUNES, INC.

v.

B. & S. ROOFING CO., INC., et al.

ANTHONY A. NUNES, INC.

v.

TOYOTA VILLAGE, INC.

Nos. 89–124–Appeal, 89–474–Appeal, 89–565–Appeal.

Supreme Court of Rhode Island.

June 19, 1990.

Patricia Rocha, Adler, Pollock & Sheehan, Providence, for plaintiff.

Stephen T. Napolitano, Conrad M. Cutcliffe, Asquith, Merolla, Anderson, Archetto & Kane, James K. Edwards, Edwards & Angell, John F. Cuzzone, Jr., Quinn, Cuzzone & Geremia, Samuel Miller, Quinn, Guzzone & Geremia, Providence, for defendant.

OPINION

MURRAY, Justice.

These three cases are consolidated before the court on the appeals of Anthony A. Nunes, Inc. (Nunes), a general contractor, and B. & S. Roofing Co., Inc. (B & S), a roofing subcontractor hired by Nunes. Nunes was found liable for the installation of defective roofs to various corporations, and B & S was found liable to Nunes. Both Nunes and B & S appeal the *Monex* judgment; B & S also appeals from the *Royal Diversified* and *Toyota Village* judgments. Nunes and B & S argue that

the trial justice erred in finding that Bird and Sons, Inc. (Bird), the designer and supplier of roofing materials, had effectively disclaimed liability for the two-ply roofing system. Also B & S submits that the trial justice erred in applying the doctrine of collateral estoppel to find that the two-ply roof was defective, but not to find that Bird was liable. In addition Nunes contends that the trial justice erred in her determination that Monex enjoyed the use of the roof for only five years.

This consolidated case turns on the relationship between Nunes, B & S, and Bird and the two-ply roofing system. The two-ply roofing system was introduced in the late 1960s and early 1970s as a new, less expensive roofing system. It replaced a five-layer system and was guaranteed for twenty years. Ultimately the roof proved to be defective.

On December 8, 1972, Bird sent bulletin No. 27 to "Approved Built–Up Roofers," including B & S, which read in part as follows:

### "2–PLY BUILT–UP ROOFING SYSTEMS

"Effective January 1, 1973 Bird & Son will no longer specify nor bond 2–Ply Roofing Systems irrespective of whether 33# Coated Felt, Multi–Ply or Bonded Base sheet is used.

"The enclosed is our 1973 Built–Up Roofing Sweets Insert, from which all 2–Ply Systems have been eliminated."

Although the bulletin did not explicitly state that the two-ply system was defective, B & S understood that Bird would no longer guarantee the two-ply roof system. In fact a discussion ensued between two principals of B & S and a Bird salesman during which the representative of B & S stated that B & S would no longer purchase Bird's built-up roofing products unless Bird renewed its endorsement of the two-ply roof system. Bird would not, how-

ever, renew its endorsement of the two-ply roof system.

After Bird had stopped specifying and bonding the system, B & S continued to build two-ply-system roofs and was hired by Nunes, a general contractor, to build the three two-ply roofs in issue in the consolidated cases before this court. The roofs were all built in 1973 by B & S from Bird materials after issuance of bulletin No. 27.[1] There is no evidence that the materials used by B & S were defective in any way. Moreover, the roofing materials that B & S bought from General Building Products, the distributor of Bird products, could have been used for purposes other than a two-ply system.

Ultimately the three roofs leaked, and the property owners filed suits against Nunes. Nunes then filed claims against B & S and Bird, seeking indemnification and/or contribution for any damages for which it might be found liable; B & S similarly claimed against Bird, seeking indemnification and/or contribution from Bird. The same trial justice issued decisions in all three cases—on November 9, 1988, for Monex and on September 29, 1989, for Royal Diversified and Toyota Village—holding Nunes liable to the building owners and B & S liable to Nunes.

Relying on the doctrine of collateral estoppel, the trial justice found that the issue of the defectiveness of the roofs was decided in two earlier consolidated cases: *Toyota Village* and *B & S Roofing Co., Inc. v. Anthony A. Nunes, Inc.* The trial justice in those two prior cases had found that B & S was liable to Nunes for the defective roofs. In addition the previous trial justice made a conditional ruling that Bird would be liable to B & S if Bird was unable to have an earlier default judgment against Bird vacated. Bird did, as the record indicates, later have the default judgment vacated.

The trial justice in the instant consolidated case found that Bird was not liable to either B & S or Nunes because Bird had

1. Although Bird has argued that B & S did not in fact use Bird materials to build the three roofs in question, we affirm the trial justice's finding of fact that Bird materials were used. There is no evidence that the trial justice mis-

conceived material evidence or was otherwise clearly wrong in this finding. *E.g. Tilcon Gammino, Inc. v. Commercial Associates*, 570 A.2d 1102, 1105 (R.I.1990).

effectively withdrawn its "specifications, recommendation and/or endorsements of the two-ply roofing system" used by B & S before B & S began construction of the roofs. She went on to say that "any liability that B & S may have incurred as a result of its own subsequent installation of a two-ply roof was not brought about by the negligence, breach of warranty, strict liability or breach of contract by Bird." In addition in entering judgment in the *Monex* case, the trial justice entered judgment against Nunes and B & S but credited these defendants for the five years during which Monex's roof served its intended purpose without leaking.

■ Both Nunes and B & S assert that Bird should be liable for the defective roofs because Bird did not effectively withdraw its endorsement of the two-ply system. They argue that bulletin No. 27 failed to meet the requirements of G.L.1956 (1985 Reenactment) § 6A–2–316.[2] This statute provides in pertinent part:

> "(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

> "(3) Notwithstanding subsection (2)

> (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."

Nunes and B & S also claim that bulletin No. 27 should have listed all defects in the system known to Bird.

We believe that bulletin No. 27 satisfied subsection 3(a) of § 6A–2–316. The language that Bird used indicating that Bird would no longer "specify" or "bond" the two-ply system was language commonly used in the trade to indicate that Bird would no longer warrant the system. Lacerda, the vice president of B & S, testified that a "bond" is a warranty of the roof system over its expected life. Apparently B & S understood this language because its representative told a Bird representative after receipt of the bulletin that it would not use Bird products unless Bird renewed its endorsement of the two-ply system. Nonetheless B & S began working on the roofs after receiving Bird's notice of withdrawal of the warranty.

■ We also do not believe that Bird was required to warn of known dangers and defects because this case does not involve an issue of products liability. According to G.L.1956 (1985 Reenactment) § 9–1–32(a)(1),

> " 'Product liability damages' means damages because of personal injury, death, or property damage sustained by reason of an alleged defect in a product, or an alleged failure to warn or protect against a danger or hazard in the use or misuse of such product, or an alleged failure to instruct properly in the use of a product."

Products-liability law applies to products that are either inherently dangerous or capable of causing personal injury. *See Scittarelli v. Providence Gas Co.,* 415 A.2d 1040 (R.I.1980) (kitchen stove), and *Ritter v. Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971) (gas range). In this case the materials supplied by Bird were neither inherently dangerous nor capable of causing personal injury. Moreover, the materials that Bird sold were not defective. They could have been used for roofs other than the two-ply roof.

Furthermore B & S claims that the trial justice erred by limiting the application of collateral estoppel and failing to find Bird liable to B & S as did the trial justice in the earlier case. If the previous trial justice's finding of the defective roof was to be

---

**2.** The 1985 Reenactment made several minor stylistic and capitalization changes.

adopted, B & S argues that so too should the finding of Bird's liability to B & S.

 This court has held that "[t]he prerequisites for the application of collateral estoppel are [1] an identity of issues, [2] a final judgment on the merits, and [3] proof that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action." *Firemen's Fund Insurance Co. v. O'Neill,* 549 A.2d 1020, 1021 (R.I.1988) (citing *Providence Teachers Union v. McGovern,* 113 R.I. 169, 172, 319 A.2d 358, 361 (1974)). In deciding whether to apply collateral estoppel, the trial justice in the present case must determine whether a rational trier of fact in an earlier case could have based a decision upon an issue other than that which a party seeks to foreclose from consideration. *State v. Berberian,* 122 R.I. 693, 699–700, 411 A.2d 308, 311 (1980).[3] Moreover, collateral estoppel renders conclusive in a subsequent action the determination of a particular issue that was actually litigated.

We believe that the trial justice was correct in not applying the doctrine of collateral estoppel to find Bird liable. The trial justice in the previous case found that Bird was liable to B & S, but his judgment was conditional on Bird's success in obtaining a vacation of the entry of a default. The trial justice's decision finding Bird liable, therefore, was not based upon his determination of the issue of whether Bird had effectively disclaimed liability for the two-ply roofing system. The underlying issue of the effect of the disclaimer was never reached. Instead the decision was based on the entry of a default. In contrast the trial justice was correct to apply the doctrine of collateral estoppel to the underlying issue that was already decided in the previous action, that is, the issue of the defective roof.

The final claim in this consolidated case asserted by Nunes is that the trial justice erred in her determination of the number of years that Monex had use of the roof before it became defective. Nunes claims that the roof functioned between seven and nine years.

This court has repeatedly stated that the findings of a trial justice sitting without a jury are accorded great deference and are not disturbed unless the trial justice misconceived material evidence or was otherwise clearly wrong. *E.g. Tilcon Gammino, Inc. v. Commercial Associates,* 570 A.2d 1102, 1105 (R.I.1990). The trial justice based her finding of the number of years that the roof was in use on the uncontroverted evidence that leaks began in 1978 or 1979. The trial justice's determination of the number of years Monex enjoyed use of an operative roof is well supported by the evidence.

For the foregoing reasons we find the appeals of the defendants Nunes and B & S to be without merit. The appeals are therefore denied and dismissed, and the judgments entered in the Superior Court are hereby affirmed.

---

**3.** The court in *State v. Berberian,* 122 R.I. 693, 411 A.2d 308 (1980) considered the doctrine of collateral estoppel in a criminal context. We believe that the discussion of collateral estoppel in that case is applicable to the consideration of collateral estoppel in this civil case.