## TOWN OF SMITHFIELD

v.

**Daniel P. FANNING, Director of the Rhode Island Department of Transportation and the State of Rhode Island.**

No. 90–08–A.

Supreme Court of Rhode Island.

Feb. 7, 1992.

Thomas R. Bender, Hanson, Curran, Parks & Whitman, James Marusak, Gidley, Lovegreen & Sarli, James T. Murphy, Hanson, Curran, Parks & Whitman, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Michael L. Rubin, Sp. Asst. Atty. Gen., for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the town of Smithfield (town) and also by a proposed intervenor, Washington Highway Development, Inc. (Washington), from a judgment entered in the Superior Court denying the prayers of a complaint for injunctive relief filed by the town against Daniel P. Fanning, director of the Rhode Island Department of Transportation (director).[1] We affirm. The facts and travel of the case insofar as pertinent to this appeal are as follows.

According to the findings of the trial justice, the director made plans to construct a storage facility for salt compounds used in salting highways during icy weather at the intersection of Route 116 and Route 7 in the town of Smithfield. This is a semirural area that has been zoned for industrial purposes. However, under the town zoning ordinances there are no permitted uses. Consequently in each instance every person who seeks to construct a building or facility in that area must ask for a special exception. It is undisputed that no such application was made by the director.

The town concedes that the director began studying the need for a salt storage facility in this area during the year 1985. Consultants were hired to do design work, and the director consulted and coordinated the planning process with the Department of Environmental Management. Adjacent property owners were notified; notice was sent to the town and to the town engineer. There is some question concerning whether the notice to the town indicated that the proposed facility would be used for salt storage.

In 1988 a report was issued, and the director notified the town engineer of the intention to build a salt storage facility at the parcel of real estate in question, which was already owned by the state. On December 29, 1988, the town council executive

1. Originally the action was brought against the current director's predecessor, Matthew J. Gill, Jr. In accordance with Rule 25 of the Superior Court Rules of Civil Procedure the present incumbent has been substituted as party-defendant.

coordinator advised the director or his subordinates that the town objected to the placement of the salt storage facility at the proposed location. As a result of this objection, meetings were held in January and March 1989 in which the representatives of the director consulted with representatives of the town. The director contends that all suggestions offered by the town concerning the design of the structure were incorporated. It is the position of the town that the director should have submitted these plans as would any other applicant to the zoning board of review for a special exception. The director contends that the town did not make mention of its position concerning the necessity of applying to its zoning board during the 1989 meeting. Believing that sufficient consultations had taken place, the director solicited bids for the project, awarded a contract, and began work.

It was only as site work began on November 7 or 8, 1989, that the town forcefully renewed its objection by issuing a stop-work order through its engineer. The reason given for the stop-work order was that the director had not obtained a permit and was in violation of the town's soil erosion ordinance. On that same date a cease-and-desist order was issued by the town zoning-enforcement officer for violation of the zoning ordinance.

Following the issuance of these orders, negotiations took place between representatives of the director and the town. The director contends that his representatives met all the concerns of the town except one. The director refused to subject any future changes in the proposed facility to the town's zoning officials. The director took the position that he should not be wholly subservient to the town's ordinances and that there was at least a qualified immunity from such ordinances on the part of a state agency.

This disagreement resulted in the filing by the town of a complaint in the Superior Court seeking that the construction of the proposed facility be enjoined. The complaint alleged *inter alia* that the director had not applied for or obtained permission from the zoning board and that also the director was in violation of the town's soil erosion ordinance. The town also alleged that the director was in violation of G.L. 1956 (1985 Reenactment) chapter 20 of title 10 which governs violations of environmental quality standards.

A temporary restraining order was issued, and thereafter a hearing was held by the trial justice on the town's petition for preliminary injunction. At the close of the hearing the parties stipulated that the hearing on preliminary injunction might be combined with and considered as a final hearing on the merits of the case. The trial justice engaged in a balancing process in accordance with the principles enunciated in *Blackstone Park Improvement Association v. State Board of Standards and Appeals*, 448 A.2d 1233 (R.I.1982), and determined that the director had consulted with the town and made reasonable efforts to resolve the points of disagreement save the one element of agreeing to subservience to the town's ordinances. He said that the interest of the traveling public on the highways within the town "was heavily in favor of the state as opposed to the local community." He found no evidence at all of any violation of environmental quality standards.

At the outset of the trial of the case, the trial justice had declined to permit Washington, the owner of adjacent property, to intervene in the action on the ground that the intervenor lacked standing to intervene as of right and, as a discretionary matter, he determined that the intervenor would unduly broaden the scope of the litigation brought by the town. He felt that Washington's proposed action included common law claims as well as the statutory claims made by the town. This appeal has ensued.

In support of its appeal the town raises a number of issues that will be considered in the order in which they are set forth in the town's brief. Washington's contention will be considered separately.

I

BALANCING TEST

■ The essential argument made by the town is that the trial justice erred in con-

ducting the balancing process during the course of the hearing in the Superior Court. The town contends that the trial justice should have required the director to submit to the procedures required by the town's zoning ordinances prior to determining whether the director should be immune from that process. It is undisputed that in *Blackstone Park Improvement Association,* this court engaged in a balancing process in determining whether the state might expand a rehabilitation facility at the Donley Center in a residential neighborhood. The contending parties read the case differently concerning whether in future cases a state agency should be required to submit to municipal ordinance procedures prior to raising the issue of immunity or, put another way, to submit the issue of immunity initially to the municipal zoning board. The director contends that this question need not be answered in this case since the town literally invited the trial justice to perform the balancing test himself. In making this argument, the director quotes a statement made by the town's special solicitor at the outset of the hearing before the trial justice. This statement is set forth below.

> "In order to resolve the question of whether or not in the particular instance the state is immune and exempt from the zoning ordinances, we must adopt this balancing test. And the Supreme Court sets forth the five particular standards that ought to be touched upon by the court in weighing the scales. My reading of the case is that *when the Court has done that and heard the evidence and weighed the interests* of the town [against] those of the state *and complied* with the five step standard established by the Supreme Court, *once the court has done that, it may find that the state either is immune and exempt from the zoning ordinances and need not go through the hoops at all, or on the other hand, that it is required, as [any other] citizen would be required, to go through the town's zoning procedures* in order to protect those interests of the town *which the court had determined* outweighed the broader interest of the state."  (Emphasis added.)

The director argues that this statement constituted a waiver of any claim on the part of the town that the trial justice should not engage in a balancing process. He also argues that in light of the position taken by the town's special solicitor, the issue of the propriety of his engaging in a balancing process was not raised before the trial justice. With this latter argument we must agree.

No principle of appellate review is better settled in this state than the doctrine that this court will not consider an issue raised on appeal that has not been raised in reasonably clear and distinct form before the trial justice. *See, e.g., Providence Lodge No. 3 F.O.P. v. City of Providence,* 542 A.2d 661 (R.I.1988); *Lawrence v. Anheuser–Busch, Inc.,* 523 A.2d 864 (R.I.1987); *Sacco v. Narragansett Electric Co.,* 505 A.2d 1153 (R.I.1986); *Phoenix Construction Co. v. Hanson,* 491 A.2d 330 (R.I. 1985); *Homar, Inc. v. North Farm Associates,* 445 A.2d 288 (R.I.1982); *Ludwig v. Kowal,* 419 A.2d 297 (R.I.1980). In the instant case, the record does not reveal that the town raised this issue before the trial justice, even though some of the allegations of the complaint might be so construed. Indeed, the statement made by the town's special solicitor clearly and forcefully suggests that the question of immunity and the balancing procedures pursuant thereto should be resolved by the trial justice. In light of this record, we must decline to consider the issue of whether the trial justice erred in not remanding this case to the town zoning board for initial determination. In the circumstances of this case the trial justice did exactly what the parties requested that he do. Such a response could not be deemed erroneous. The town's citations of cases from California and other jurisdictions whose rules of procedure are different from ours are unpersuasive on this point.

## II

## BURDEN OF PROOF

■ The town argues that the trial justice erred in assigning the burden of proof

to the town to demonstrate by a preponderance of the evidence that the balance of interest in respect to immunity favored the town rather than the state. In allocating the burden of proof, the trial justice was following principles that have long prevailed in this jurisdiction. One who seeks a preliminary injunction in the Superior Court, as was the initial relief requested by the town in this case, must demonstrate, and the presiding justice must find, that there has been a showing of a reasonable probability of ultimately succeeding on a final hearing. *See, e.g., Gilbane Building Co. v. Cianci,* 117 R.I. 317, 366 A.2d 154 (1976); *Coolbeth v. Berberian,* 112 R.I. 558, 313 A.2d 656 (1974). The allocation of the burden of proof upon a party seeking equitable relief is one of long standing and should generally be observed, however compelling to the party-plaintiff the ground asserted may seem. There was certainly no error on the part of the trial justice in his allocation of the burden of proof in this hearing on preliminary injunction and in the determination on the merits as stipulated by the parties.

## III

## CORRECTNESS OF THE TRIAL JUSTICE'S FACTUAL FINDINGS

■ Although the position of the town largely emphasizes the necessity of submission to the municipal agencies for initial decision, it does indirectly place in issue the correctness of the factual findings made by the trial justice and his consideration of the appropriate factors that were set forth in *Blackstone Park.* The elements to be considered were derived from an opinion by the Supreme Court of New Jersey in *Rutgers, State University v. Piluso,* 60 N.J. 142, 286 A.2d 697 (1972), and consist of the following factors:

"(1) the nature and scope of the instrumentality seeking immunity, (2) the kind of function or land use involved, (3) the extent of the public interest to be served, (4) the effect local land-use regulation would have upon the enterprise concerned, and (5) the impact upon legit-

imate local interest." *Blackstone Park,* 448 A.2d at 1239.

The trial justice was aware of the factors to be considered and referred to the elements as "the so-called *Rutgers Test* " or "the balancing of interests test in cases involving intergovernmental zoning clashes."

■ We have reviewed the decision of the trial justice and the evidentiary record upon which it was based. It is, of course, well settled that findings of fact made by a trial justice, sitting without a jury, are given great weight and will not be disturbed unless the trial justice has overlooked or misconceived relevant and material evidence or is otherwise clearly wrong. *Monex, Inc. v. Anthony A. Nunes, Inc.,* 576 A.2d 1206 (R.I.1990); *Tilcon Gammino, Inc. v. Commercial Associates,* 570 A.2d 1102 (R.I.1990).

In the case at bar a review of the record indicates that the trial justice conscientiously and extensively reviewed all the evidence presented, applied the appropriate factors as set forth above, and concluded that the interest of the director in this particular area and the interest of the traveling public outweighed the interest of the town in the enforcement and application of its zoning ordinances. The trial justice overlooked no aspect of the town's claim. He considered environmental aspects and determined that no evidence existed of any violation of environmental standards. It was the burden of the town to present the evidence upon which it relied in a hearing on the merits as well as on preliminary injunction, *Rhode Island Turnpike & Bridge Authority v. Cohen,* 433 A.2d 179, 183 (R.I.1981). After our review of the record we conclude that the trial justice's determination and findings of fact not only were not clearly wrong but were correct. We find no basis to disturb either the findings of fact or the conclusions of law.

## IV

## MOTION TO INTERVENE

■ As earlier indicated, the trial justice declined to allow Washington as an adja-

cent landowner to intervene in this intergovernmental dispute between the town and the director. His rationale for so doing was that he did not wish to broaden the issues between the two contending parties by adding the additional claims of a private intervenor whom the trial justice correctly found to have no standing as of right under G.L.1956 (1985 Reenactment) chapter 20 of title 10. In considering permissive intervention under Rule 24(b) of the Superior Court Rules of Civil Procedure, the trial justice noted that among the claims that might arise on the part of the proposed intervenor would be a possible claim for inverse condemnation, trespass, and consequential damages. The trial justice indicated that such rights of action might well be available to the proposed intervenor in an independent suit. It was the prime responsibility of the trial justice to resolve an intergovernmental agency dispute. His declining to broaden the issues in such an action by including the various claims to be raised by the intervenor was no abuse of discretion.

For the reasons stated, the appeals of the town and of Washington are hereby denied and dismissed. The judgment entered in the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.