DECISION
This case is before the Court on appeal under the provisions of G.L. 1956 § 42-35-15 from a May 4, 2006 Order (Order) of the Division of Public Utilities and Carriers (Division) in the case docketed before the Division in Docket Number D-06-13 entitled "In Re: Joint Petition for Purchase and Sale of Assets by the Narragansett Electric Company and the Southern Union Company."
The Order, inter alia, denied Plaintiff's Petition for Intervention (Plaintiff's Petition) under the Division's Rule 17.
The record before this Court establishes that Narragansett Electric Company provides electric distribution service in most of the state of Rhode Island, and that it is a subsidiary of National Grid U.S.A.
The record also discloses that Southern Union Company provides gas distribution service in most of the state of Rhode Island.
Essentially, the matter pending before the Division seeks its approval of the transactions contemplated by a certain Purchase and Sale Agreement dated February 15, 2006 between National Grid U.S.A. and Southern Union Company under which National Grid U.S.A. agreed to purchase inter alia Southern Union Company's aforementioned gas distribution service and assets used in connection therewith.
The Order which is the subject of this appeal under the provisions of the Administrative Procedures Act dealt not only with Plaintiff's Petition, but also similar requests from:
 (a) The Rhode Island Department of Attorney General (Attorney General);
 (b) The Rhode Island Department of Environmental Management (DEM);
 (c) The City of Providence (Providence);
 (d) The Town of Tiverton (Tiverton);
 (e) The United Steel Workers, Local 13421 (Union);
 (f) The George Wiley Center (Wiley Center);
 (g) The Energy Council of Rhode Island (The Energy Council);[12] and
 (h) A group of Tiverton residents who have sued Southern Union Company with respect to certain soil contamination (the Litigants).
The Order, permitted intervention by the Attorney General; permitted on a very limited basis participation by Providence (in accordance with Providence's amended request); permitted intervention by DEM and Tiverton, limited, however, to those intervenors ". . . seeking assurances that the purposed asset sale does not negatively impact Southern Union's ability to pay for remedial actions in the event it is found liable for any of the contamination in Tiverton." Also permitted to intervene with certain pointed admonitions from the hearing office was the Wiley Center.
In addition to East Providence, the Order denied intervention also by the Union and by the Litigants.
 Standard of Review
This Court's appellate review of the Division's Order is undertaken pursuant to the provisions of G.L. 1956 § 42-35-15
which in pertinent part provides:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Of course when reviewing a decision of an agency, a justice of this Court may not substitute his or her judgment for that of the agency on issues of fact or as to the credibility of testifying witnesses. As our Court has oft times said, that is true even in cases where the court after reviewing the record from below might be inclined to view the evidence differently than the agency did. Essentially, this Court is required to uphold the agency's findings and conclusions of fact if they are supported by competent evidence. However, questions of law are not binding upon the reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. SeeCarmody v. R.I. Conflict of Interest Commission, 509 A.2d 453,458 (R.I. 1986).
 Intervention Before the Division
As indicated above, Plaintiff here is aggrieved by the Order's denial of Plaintiff's Petition pursuant to the provisions of the Division's Rules of Practice and Procedure. Section 17 of those rules provides in pertinent part as follows:
 "17. INTERVENTION
 (a) Procedure
 Participation in a proceeding as an intervenor may be initiated by order of the Hearing Officer upon a motion to intervene.
 (b) Who May Intervene.
 Subject to the provisions of these rules, any person with a right to intervene or an interest of such nature that intervention is necessary or appropriate may intervene in any proceeding before the Division. Such right or interest may be:
 (1) A right conferred by statute.
 (2) An interest which may be directly affected and which is not adequately represented by existing parties and as to which movants may be bound by the Division's action in the proceeding. The following may have such an interest: consumers served by the applicant, defendant, or respondent and holders of securities of the applicant, defendant, or respondent.
 (3) Any other interest of such a nature that movant's participation may be in the public interest.
 (c) Form and Contents of Motion.
 A motion to intervene shall set out clearly and concisely facts from which the nature of the movant's alleged right or interest can be determined, the grounds of the proposed intervention, and the position of the movant in the proceeding.
 * * *
As indicated in the first sentence of Rule 17(b) above:
 ". . . any person with a right to intervene or an interest of such nature that intervention is necessary or appropriate may intervene in any proceeding before the Division." (Underscoring added for emphasis.)
That same section of Rule 17 provides examples of the types of rights and/or interests which may intervene. It further requires that a motion to intervene set out ". . . clearly and concisely facts from which the nature of the movant's alleged right or interest can be determined, the grounds of the proposed intervention, and the position of the movant in the proceeding."
Actually, the Court in reviewing the Order must turn to the motion for intervention (styled in this matter as a Petition for Intervention) filed by Plaintiff. Review of that document discloses that Plaintiff relies on two separate and supposedly distinct set of facts to establish its right or interest as required by Rule 17(b): First, of the ten paragraphs in Plaintiff's Petition eight (paragraphs 2 through 6 and 9, and so some extent 7 and 8) deal with certain proceedings before the Federal Energy Regulatory Commission (FERC) as to a liquefied natural gas marine terminal (LNG Terminal) on land owned by New England Gas situated in Providence. The LNG Terminal site is less than one mile from the East Providence Waterfront Special Development District (District) authorized pursuant to the provisions of Chapters 344 and 345 of Public Laws 2003. Second, the final paragraph of Plaintiff's Petition represents that New England Gas owns certain property (not otherwise described) located within the district that must be environmental assessed and assimilated into the East Providence Waterfront Development Plan.
As to the LNG Terminal, FERC dismissed the so-called KeySpan LNG proceeding before it, at the request of Plaintiff and others. That dismissal is on appeal before the United States Court of Appeals for the District of Columbia Circuit. Plaintiff currently is intervening in that appeal. Certain real estate, which is an asset owned by New England Gas, is in close proximity to the LNG Terminal. Further, certain other real estate owned by New England Gas is as aforesaid, located within the District.
Part of the record before this Court is the transcript of a hearing conducted by the hearing officer on April 25, 2006, with respect to the various motions to intervene. During that hearing, Plaintiff here was allowed to expand upon the allegations contained in its petition (See Tr. pages 5-6 and 53-55).
 STATUTORY SCHEME
The Court earlier noted that the proceedings before the Division seeks its approval of transactions agreed to in a Purchase and Sale Agreement dated February 15, 2006. General Laws 1956, § 39-3-24 permits such transactions but only with the consent and approval of the Division. General Laws 1956, §39-3-25 provides the procedure for obtaining such consent and approval and provides that the Division may require a hearing and further provides:
 "If after the hearing . . . the division is satisfied that the prayer of the petition should be granted, that the facilities for furnishing service to the public will not thereby be diminished, and that the purchase, sale, or lease and the terms thereof are consistent with the public interest, it shall make such order in the premises as it may deem proper and the circumstances may require."
 HEARING OFFICER'S ORDER
The hearing officer set forth his findings (rationale) for denying intervention by Plaintiff as follows:
 "In determining whether the requested interventions are necessary or appropriate, Rule 17(b) mandates that the Movant's must demonstrate that they either have: (1) a right [to intervene] conferred by statute, (2) an interest which may be directly affected and which is not adequately represented by existing parties and as to which . . . [the movant] may be bound by the Division's action in the proceeding. The following may have such an interest: consumers served by the applicant, defendant, or respondent and holders of securities of the applicant, defendant, or respondent, or (3) any other interest of such nature that the movant's participation may be in the public interest.
 To start, the Division finds that none of the Movants have demonstrated a statutory right to intervene or a "directly affected" interest that is not adequately represented by the Division's Advocacy Section and/or the Attorney General, both ratepayer advocates. Accordingly, the issue boils down to whether it would be in the public interest to permit RIDEM, Tiverton, East Providence, the Union, the Tiverton Residents, and the Wiley Center to participate in this proceeding?
 In deciding whether the "public interest" demands the participation of these movants, the Division must logically find that their individual interests warrant recognition and protection in furtherance of the general welfare of the public.[13] In considering this issue, the Division must also balance several related factors, specifically, whether the Division ultimately has the authority to grant the relief requested, whether the Movants may more effectively pursue their respective interests in other forums, and whether the intervention(s) would unduly delay or prejudice the adjudication of the rights of the Petitioners and other parties."
 * * *
 The Division must also deny East Providence's motion to intervene. The Division finds East Providence's rationale for intervention, although arguably in the public interest, unreasonably vague and/or beyond the scope of this proceeding. First, with respect to East Providence's concerns over the future of the KeySpan LNG facilities in Providence, not only is the matter not directly related to the instant proceeding, the Division is powerless to exert any influence over the future of that facility. As East Providence is aware, due to the interstate nature of that LNG facility the Federal Energy Regulatory Commission (FERC) has exclusive jurisdiction over any issues related to its future expansion and development. Therefore, the Division fails to understand the relevance of the issue in the context of this docket or the actual relief that East Providence is seeking.
 Second, with respect to East Providence's environmental concerns and redevelopment interests regarding a parcel of land that Southern Union owns within the City's Waterfront Development District, the Division again fails to understand the relief that East Providence is seeking. If East Providence is seeking to purchase this property from Southern Union (or Narragansett) or have the property redeveloped, those negotiations should take place outside the Division's hearing room. The Division finds that pursuing this issue in the instant docket would unduly delay and prejudice the adjudication of the rights of the Petitioners[14] and unreasonably broaden the issues in this case.[15]
 Also with respect to East Providence, although the Division will not approve East Providence's petition for full intervention status, the Division will approve limited intervention for East Providence of the same nature approved for Providence in this case. If East Providence would like to be included on the service list in order to receive copies of all pleadings and documents in this docket, the City may contact the Division's Clerk and request, pursuant to this order, that such action is taken."
 DISCUSSION
As suggested supra, it is abundantly clear that the Order of the hearing officer (The Division) is entitled to substantial deference. This Court is particularly taken with the hearing officer's determination that intervention by Plaintiff would . . . "unreasonably broaden the issues in this case." Review of the record clearly demonstrates that federal jurisdiction is paramount in connection with the LNG Terminal. That matter presently is pending before the United States Court of Appeals for the District of Columbia Circuit on appeal from the determination denying the same by the Federal Energy Regulatory Commission. With respect to the New England Gas land situated within the East Providence Waterfront Special Development District, there is no evidence that any claim of any nature has been asserted with respect to alleged environmental contamination. Unlike the Tiverton situation, there are no administrative assertions against New England Gas or Southern Union Company presently pending.
To permit the intervention here sought would in the opinion of this Court provide unwarranted opportunistic leverage in favor of Plaintiff that would be inconsistent with the proper scope of proceedings before the Division in accordance with the provisions of G.L. 1956, § 39-3-25 and would broaden, based on the vague allegations in Plaintiff's Petition, the scope of hearings contemplated under the last referenced section to the detriment of the petitioners, Narragansett Electric Company and Southern Union Company, as well as to the public generally by incorporating into such proceeding, all of the provisions of G.L. 1956, § 39-2-1.
This Court believes that an expansive reading of § 39-3-25 is not consistent with the legislative scheme contemplated by the chapters of our General Laws which deal with the Duties of Utilities and Carriers (§ 39-2-1 et seq.) and with the Regulatory Powers of Administration (§ 39-3-1 et seq.) under which Plaintiff may well seek to have opened a docket to deal with the issues it seeks to inject into the matter contemplated by the pending docket including perhaps issues dealing with the East Providence Waterfront Special Development District.
Other venues and/or other proceedings exist for Plaintiff to seek to protect its interest. Hearings in connection with approval of the sale contemplated by the Purchase and Sale Agreement is not the proper venue to address these issues. Plaintiff's appeal hereby is denied. Order to enter.
[12] The Energy Council withdrew its Petition.
[13] See definition of "public interest" in Black's Law Dictionary, Seventh Edition.
[14] See Chariho School Committee v. Broadwell, 703 A.2d 622
(R.I. 1997).
[15] See Town of Smithfield v. Fanning, 602 A.2d 939 (R.I. 1992).