April 29, 2020

Town of Exeter, by and through its     :
   Solicitor, James P. Marusak

        v.                  :           No. 2018-274-Appeal.
                                                 (PC 17-1549)

State of Rhode Island et al.        :


Town of Richmond, Rhode Island     :

        v.                   :           No. 2018-307-Appeal.
                                                 (PC 17-1666)

State of Rhode Island et al.        :


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Town of Exeter, by and through its    :
    Solicitor, James P. Marusak

           v.               :             No. 2018-274-Appeal.
                                       (PC 17-1549)

State of Rhode Island et al.    :

Town of Richmond, Rhode Island    :

           v.               :             No. 2018-307-Appeal.
                                       (PC 17-1666)

State of Rhode Island et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** These consolidated cases came before this Court on appeals by the petitioners, the Town of Exeter and the Town of Richmond (the towns or petitioners), from a final judgment in favor of the respondents, the State of Rhode Island; Janet Coit, in her capacity as Director of the Department of Environmental Management; and Michael DiBiase,[1] in his capacity as Director of the Department of Administration (collectively the state or respondents), entered on August 17, 2018, following the denial of the towns' motion for summary judgment and the grant of the state's cross-motion for summary judgment.[2] After each appeal was

---

[1] Pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure, Brett Smiley was automatically substituted for Michael DiBiase in this action after he replaced him as the Director of the Rhode Island Department of Administration.

[2] We note that the parties are here on appeal, not by writ of certiorari. The parties, however, are designated as petitioners and respondents herein because the initiating documents filed in the Superior Court were verified petitions for declaratory and injunctive relief.

- 1 -

assigned to the regular argument calendar, the towns moved to consolidate the appeals, and this Court granted the motion on May 17, 2019. On appeal, the towns argue that the trial justice erred in finding that the Comprehensive Planning and Land Use Regulation Act, G.L. 1956 chapter 22.2 of title 45 (the Act), provides the proper procedure to resolve zoning disputes between the state and municipalities. The towns assert that the state, in its capacity as a developer of land, should be required to submit to local zoning procedures and that the test set forth in the Act was not intended to replace the balancing-of-interests test set forth in *Blackstone Park Improvement Association v. State Board of Standards and Appeals*, 448 A.2d 1233 (R.I. 1982). The parties appeared before this Court on February 27, 2020, for oral argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

# I

## Facts and Travel

The facts of this case are largely undisputed. Annually, between the 2012 and 2018 fiscal years, funding for the Arcadia Natural Resources and Visitors Center (the building or project), which included office spaces for respondent Rhode Island Department of Environmental Management (DEM), laboratory space, and a visitor center, was included in the Governor of Rhode Island's Capital Budgets. According to the state's written submissions, "funding for the [building] was vetted as part of the annual budget process[,]" "considered at public hearings, and included in multi-year Rhode Island Capital Asset Protection * * * budgets approved by the General Assembly over several years." Intent on use of the public funds for this proposed project, DEM began planning construction of a 12,716-square-foot building in the Arcadia Management Area, adjacent to Browning Mill Pond, in 2014. It appears from the blueprints that the primary purpose of the

building was to serve DEM employees.[3] According to the state, the plans and specifications for the building were posted for public bid on the website of the Rhode Island Department of Administration Division of Purchases from January through November 2016. The state then accepted a bid and entered into a contract to build with Mill City Construction, Inc., on January 20, 2017.[4]

The proposed building was to be located entirely in the Town of Richmond, in an area zoned for residential use. A portion of the building's parking lot, a driveway, and a wastewater treatment system for the project was to be located within the Town of Exeter, in an area zoned for open space public land. According to the state, Richmond was notified of the project in 2015 and Exeter was notified in 2014 or 2015. In connection with this litigation, the state provided a letter dated December 2, 2015, that indicates that an Exeter building official was aware of the project. Exeter disputes this, asserting that the town did not learn of the project until 2017.

In February and March 2017, at the Richmond Town Council's request, officials from DEM met with Richmond town officials, attended a Richmond Town Council meeting to explain the project, and attended a public meeting to answer questions from town residents. The state, however, indicated that it would not agree to alter the project in any way. On February 16, 2017, Exeter sent a cease and desist letter to DEM, the respondent Rhode Island Department of Administration (DOA), and the Rhode Island Department of Attorney General, demanding that

---

[3] According to the state, 39 percent of the proposed building is designated for public space, 33 percent of the building is office space for DEM employees, and 28 percent of the building is laboratory space.

[4] Such a factual scenario reminds us of the words of former President Calvin Coolidge: "Nothing is easier than the expenditure of public money. It does not appear to belong to anybody. The temptation is overwhelming to bestow it on somebody. But the results of extravagance are ruinous. * * * Nothing is more destructive of the progress of the Nation than government extravagance." Calvin Coolidge, 30th President of the United States, *State of the Union 1926*, December 7, 1926.

the project stop "until proper local permits are obtained and administrative review has been completed[,]" to which Exeter received no response. It is unclear from the record whether a meeting between Exeter and the state took place.

On April 6, 2017, Exeter filed a "verified petition for declaratory and injunctive relief" in Providence County Superior Court against respondents, seeking a declaration that (1) the project was subject to development plan review by the town; (2) the project required town planning board and zoning board review and approval; (3) the project violated environmental quality standards; and (4) the state failed to obtain permitting for earth removal, soil erosion, and drainage. Exeter also asked for issuance of an injunction preventing the state from proceeding with the project.

On April 12, 2017, Richmond filed its own action for declaratory and injunctive relief in Superior Court against the State of Rhode Island and the Director of DEM. Richmond likewise sought a declaration that the state was required to consult with the town and comply with the town's zoning ordinance, comprehensive plan, and subdivision regulations. Richmond also sought to enjoin the state's construction of the building until the state complied with the town's zoning, planning, and subdivision requirements.

On May 25, 2017, an order was entered consolidating the two actions in Superior Court. On July 19, 2017, the towns filed a joint motion for a preliminary and/or permanent injunction, to which the state objected. In a written decision issued on December 15, 2017, a hearing justice (the first hearing justice) denied the towns' motion for a preliminary injunction; an order implementing the decision followed. The first hearing justice had found that the state was immune from the towns' zoning ordinances.

The towns and the state thereafter filed cross-motions for summary judgment as to the towns' requests for declaratory judgment. A hearing justice (the second hearing justice) issued a

bench decision on the motions on August 6, 2018. The second hearing justice found that the state was not required to obtain municipal approval and permits before beginning a project and, further, that the Act was the proper mechanism to resolve land-use issues that arise between the state and municipalities. Specifically, the second hearing justice noted that a municipality must conform its zoning ordinance to its comprehensive plan and that § 45-22.2-10(g) governs the process a state agency must follow when it wishes to pursue a project that does not conform with a municipality's land-use regulations. She thereafter granted summary judgment in favor of the state and denied the towns' motion for summary judgment with regard to the towns' requests for declaratory judgment. She also denied the towns' requests for a permanent injunction. An order memorializing that decision was entered on August 17, 2018. Final judgment in favor of the state was also entered on August 17, 2018. Exeter filed a notice of appeal on August 21, 2018, and Richmond filed a notice of appeal on September 4, 2018.

## II

### Standard of Review

"A motion for summary judgment 'is designed to decide in an expeditious fashion cases presenting groundless claims.'" *Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated*, 199 A.3d 1034, 1038 (R.I. 2019) (deletion omitted) (quoting *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 487, 261 A.2d 19, 21 (1970)). This Court reviews a hearing justice's grant of a motion for summary judgment *de novo*. *See id.* "If we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *McGovern v. Bank of America, N.A.*, 91 A.3d 853, 857 (R.I. 2014) (quoting *Pereira v. Fitzgerald*, 21 A.3d 369, 372 (R.I. 2011)).

To resolve this case, we must interpret several statutory provisions. "We review questions of statutory interpretation *de novo*." *Lang v. Municipal Employees' Retirement System of Rhode Island*, 222 A.3d 912, 915 (R.I. 2019) (quoting *Bluedog Capital Partners, LLC v. Murphy*, 206 A.3d 694, 699 (R.I. 2019)). "In so doing, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (quoting *Bluedog Capital Partners*, 206 A.3d at 699). "When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *In re B.H.*, 194 A.3d 260, 264 (R.I. 2018)). "The Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible." *Id.* (quoting *In re B.H.*, 194 A.3d at 264).

### III

### Discussion

### A

### *Blackstone Park* and the Act

On appeal, the towns argue that the Act is not intended to provide the exclusive remedy to resolve local land-use conflicts between the state and its municipalities. Instead, the towns argue that the test set forth in *Blackstone Park* remains valid, despite the later enactment of the Act, and that the *Blackstone Park* test applies to zoning conflicts, whereas the Act applies exclusively to comprehensive-planning conflicts. The towns further argue that an outdated comprehensive plan does not invalidate local zoning ordinances or the ordinances' applicability to the state and its

agencies.[5]  In opposition, the state argues that the Act controls all intergovernmental land-use disputes and, further, that the Act is not implicated here because neither town has an approved comprehensive plan.[6]  According to the state, Exeter's comprehensive plan expired in 2009, and Richmond's comprehensive plan expired in June 2017.  The state contends that, without approved comprehensive plans, the state is immune from being required to follow both towns' comprehensive plans and zoning ordinances.

At issue in *Blackstone Park* was an appeal from the Rhode Island Building Code Board of Standards and Appeals, which dealt with whether the state was immune from the zoning ordinances of the City of Providence. *Blackstone Park*, 448 A.2d at 1234.  The state proposed to build an addition to the Dr. John E. Donley Rehabilitation Center in a residential neighborhood, zoned by the City of Providence as an R-1 residential district intended for single-family dwellings. *Id.* at 1234, 1235.  In addressing a question of first impression, this Court adopted the balancing-of-interests test to determine whether the state was immune from Providence's zoning ordinance and, after applying that test, found in favor of the state. *Id.* at 1239-40.  This Court made clear in *Blackstone Park* that such test was the "'fairest method' by which [intergovernmental zoning] conflicts can be resolved because it is sensitive to the needs and concerns of the competing governmental entities, potentially affected property owners, local residents, and the public as a

---

[5] An insightful and helpful law review comment discussing the interplay between Rhode Island's land-use statutes and the issue of intergovernmental zoning appears in the Roger Williams University Law Review as part of its Summer 2018 edition.  We refer the interested reader to that article. Jillian M. Nobis, *To Apply or Not to Apply? That is the Question of Intergovernmental Zoning*, 23 Roger Williams U. L. Rev. 580 (2018).

[6] General Laws 1956 § 45-22.2-8(b)(2), part of the Comprehensive Planning and Land Use Regulation Act, provides that "[t]he comprehensive plan of a municipality shall not take effect for purposes of guiding state agency actions until approved by the chief [of the state planning council] or the Rhode Island superior court."

whole and takes into consideration all of the salient factors that may properly influence the result."
*Id.* at 1240.

In addressing the issue of immunity under *Blackstone Park*, the balancing court is required to weigh the following factors: "(1) the nature and scope of the instrumentality seeking immunity, (2) the kind of function or land use involved, (3) the extent of the public interest to be served, (4) the effect local land-use regulation would have upon the enterprise concerned, and (5) the impact upon legitimate local interest." *Blackstone Park*, 448 A.2d at 1239. The dispute is thereafter resolved in favor of the party whose interests outweigh the other party's interests. *See id.*

As noted *supra*, the state argues that *Blackstone Park*'s balancing-of-interests test was superseded by the enactment of the Act, which, it argues, provides the proper procedural mechanism for resolving all land-use disputes between the state and a municipality. Specifically, the state points to a procedure set out in subsection (g) of section 10 of the Act, which provides:

> "Once a municipality's *comprehensive plan* is approved, programs and projects of state agencies, excluding the state guide plan as provided for by [G.L. 1956] § 42-11-10, shall conform to that plan. In the event that a state agency wishes to undertake a program, project, or to develop a facility which is not in conformance with the *comprehensive plan*, the state planning council shall hold a public hearing on the proposal at which the state agency must demonstrate:
>
> > "(1) That the program, project, or facility conforms to the stated goals, findings, and intent of this chapter; and
> > "(2) That the program, project, or facility is needed to promote or protect the health, safety, and welfare of the people of Rhode Island; and
> > "(3) That the program, project, or facility is in conformance with the relevant sections of the state guide plan; and
> > "(4) That the program implementation, project, or size, scope, and design of the facility will vary as little as possible from the comprehensive plan of the municipality." Section 45-22.2-10(g) (emphasis added).

The state alleges that zoning and comprehensive planning are inextricably intertwined in that zoning must reflect comprehensive planning, and that therefore § 45-22.2-10(g) applies to disputes concerning both zoning and comprehensive planning. The State contends that, therefore, when a municipality has an outdated or unapproved comprehensive plan, the state is immune from *both* the municipality's comprehensive plan and its zoning ordinances. We disagree.

In *West v. McDonald*, 18 A.3d 526 (R.I. 2011), this Court made clear that zoning and comprehensive planning are two distinct mechanisms that "are meant to address substantively different issues and may contain different, yet non-conflicting, requirements." *West*, 18 A.3d at 541. We noted that "[t]here is no requirement that the zoning ordinances and comprehensive plan be identical." *Id.* While municipalities are required to conform their zoning ordinances to their comprehensive plans, the deadlines for doing so are, in most instances, directory, not mandatory; a municipality's failure to conform its zoning ordinances to its comprehensive plan does not automatically invalidate the zoning ordinances. *See id.* at 534-35, 541.

Additionally, a plain reading of the Act leads us to the conclusion that § 45-22.2-10(g) governs comprehensive planning disputes between the state and a municipality—it does not, however, confer immunity on the state from application of a municipality's zoning ordinance. The Act was enacted in 1988, six years after this Court decided *Blackstone Park*, and yet § 45-22.2-10(g) provides only the procedure for *comprehensive planning* disputes; the word "zoning" is not mentioned in that section.[7] Bolstering our reading is the fact that, although the Act in other sections mentions zoning, it is notably left out of § 45-22.2-10(g). *See* § 45-22.2-4(26)

---

[7] One can speculate *ad infinitum* as to why the General Assembly did not include a reference to zoning in § 45-22.2-10(g), but the fact is that it did not include such a reference in that subsection; our role is to respect that reality. *See Mohasco Corporation v. Silver*, 447 U.S. 805, 826 (1980) ("We must respect the compromise embodied in the words chosen by Congress.").

(defining "zoning"); § 45-22.2-5(c) (requiring each municipality to ensure that its zoning ordinance and map are consistent with its comprehensive plan); § 45-22.2-6(b)(2)(i)(B) (noting that a comprehensive plan map must illustrate zoning); § 45-22.2-7(b)(4) (requiring neighboring municipalities to work together for zoning designations at municipality borders to ensure consistency and compatibility with adjacent areas); § 45-22.2-13(c), (g) (indicating that a municipality must amend its zoning ordinance and map to conform to its comprehensive plan and providing a resolution when they do not conform). Had the Legislature intended the procedure set forth in § 45-22.2-10(g) to govern both disputes involving comprehensive planning and those involving zoning, it would have included such language. *See In re B.H.*, 194 A.3d at 264 ("The Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible.") (brackets omitted) (quoting *State v. Clark*, 974 A.2d 558, 571 (R.I. 2009)). The plain language of subsection (g) of section 10 of the Act therefore does not extend the procedure for dealing with intergovernmental tension and comprehensive planning to zoning disputes.

Moreover, this Court affirmed the Superior Court's application of the balancing-of-interests test in *Town of Smithfield v. Fanning*, 602 A.2d 939 (R.I. 1992), which is the most recent case from this Court involving an intergovernmental zoning dispute between the state and a municipality. In *Fanning*, this Court was asked to review a trial court's decision that the balancing-of-interests test weighed in favor of the state with regard to construction of a road salt storage facility in the Town of Smithfield. *Id.* at 940, 943. The Act had been enacted four years prior to *Fanning* and included the language of § 45-22.2-10(g), but neither the parties, the trial justice, nor this Court argued or indicated that the Act provided the proper mechanism for

- 10 -

deciding such zoning disputes. *Id.* at 943. This supports our firm conclusion that the Act does not supersede the test set forth in *Blackstone Park*.

Furthermore, our survey of the law in other states indicates that we are not an outlier in our continued use of the balancing-of-interests test to resolve intergovernmental zoning conflicts. In *Blackstone Park*, this Court noted that at least nine other states had adopted the balancing-of-interests test. *Blackstone Park*, 448 A.2d at 1239. By our count, there are now fifteen states that utilize the balancing-of-interests test to resolve intergovernmental zoning conflicts.[8]

Although we are not persuaded by the state's argument that zoning and comprehensive planning are so intertwined that the procedure set forth in § 45-22.2-10(g) governs all intergovernmental land-use conflicts, that section still applies to comprehensive planning. As such, when the state seeks to pursue a project in a municipality, it must first gain approval by the State Planning Council *solely* on the issue of whether the state's proposed project complies with the municipality's *comprehensive plan*, through the process set forth in § 45-22.2-10(g). Such a procedure is only required, per the Act, where a municipality has an approved comprehensive plan *at the time the state begins the project*. Section 45-22.2-8(b)(2) ("The comprehensive plan of a municipality shall not take effect for purposes of guiding state agency actions until approved by the chief [of the state planning council] or the Rhode Island superior court.").

---

[8] In addition to Rhode Island, Alaska, Delaware, Florida, Indiana, Iowa, Kansas, Minnesota, Missouri, New Jersey, New York, North Dakota, Ohio, Oklahoma, and South Dakota have all adopted the balancing-of-interests test. *Native Village of Eklutna v. Alaska Railroad Corporation*, 87 P.3d 41, 54 (Alaska 2004). The Supreme Court of Alaska perceptively indicated that a few states have approved of the test in dicta. *Id.* (citing *Hagfeldt v. City of Bozeman*, 757 P.2d 753, 757 (Mont. 1988); *Kunimoto v. Kawakami*, 545 P.2d 684, 687 (Haw. 1976)). That court additionally noted that "[a] few other states, while not explicitly adopting balancing tests, resolve such conflicts by assessing the necessity for the state's action, or the reasonableness of the state's exercise of immunity, or of the zoning ordinance, tasks that may easily turn into a balancing of interests." *Id.* at 54-55 (footnotes omitted).

In the present case, when the state began planning construction of the project in 2014, Richmond clearly had in place an approved comprehensive plan that did not expire until June 2017. And, when the state sought bids for the project, Richmond clearly had an approved comprehensive plan. Finally, when Richmond filed its petition in Superior Court on April 12, 2017, the town clearly had an approved comprehensive plan. It was not until June 2017 that Richmond's comprehensive plan expired—three years after the point in time when the parties agree the state began planning construction. Under the facts of this case it is clear to us that, although Richmond may not as of the date of the arguments in this case have had an approved comprehensive plan, the town was in compliance at the time the state should have brought the issue before the State Planning Council. *See* § 45-22.2-10(g) (requiring the state planning council to hold a public hearing "[i]n the event that a state agency wishes to * * * develop a facility which is not in conformance with the comprehensive plan" and indicating that it is the state agency's burden to meet four requirements). As such, the state must bring the issue of the proposed project's compliance with Richmond's *comprehensive plan*, as the plan existed when Richmond filed suit on April 12, 2017, to the State Planning Council for review under the process set forth in § 45-22.2-10(g). Although we note that Exeter has not had an approved comprehensive plan since 2009, under the unique facts of this case and Exeter's clear connection with the project, we additionally require that the state bring the issue of the proposed project's compliance with Exeter's comprehensive plan, as the plan existed when Exeter filed suit on April 6, 2017, to the State Planning Council for review under the process set forth in § 45-22.2-10(g).

While we recognize the impact of a state project on a municipality's comprehensive plan and require the parties to utilize the procedure set forth in § 45-22.2-10(g), there remains still the issue of local zoning.

**B**

**Local Zoning**

The towns aver that the state must apply to a municipal zoning board prior to bringing an action in Superior Court for a trial justice to balance the interests of the state against the interests of the municipality with respect to a proposed project. According to the towns, such a procedural step and the development of a record at the zoning board level will aid the Superior Court in conducting *Blackstone Park*'s balancing-of-interests test to determine whether the proposed state project is subject to the town's zoning ordinances.

Our decision in *Blackstone Park* adopted the view that the state agency "ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." *Blackstone Park*, 448 A.2d at 1239 (quoting *Rutgers, State University v. Piluso*, 286 A.2d 697, 703 (N.J. 1972)). In our view, consultation would best occur through the exercise of the municipality's zoning ordinance. Our research reveals that the jurisdictions that have adopted the balancing-of-interests test and discussed the concept of consultation with local authorities that is referenced in *Rutgers* required the state to apply to the local zoning authority before an action could be brought in the appropriate court for application of the balancing-of-interests test in the case of a conflict.

Additionally, and more generally, such a procedure has been adopted by the majority of jurisdictions that have adopted the balancing-of-interests test.[9] One such court stated:

> "[I]f the state were not required to seek local approval, the city would always be forced to litigate its disagreement * * *. It serves the public's benefit to resolve these controversies in a way which does not mandate the most expensive and least expeditious way of settling intergovernmental disputes." *Brown v. Kansas Forestry, Fish and Game Commission*, 576 P.2d 230, 236 (Kan. 1978) (quoting *Hillsborough Association for Retarded Citizens, Inc. v. City of Temple Terrace*, 332 So.2d 610, 612 n.3 (Fla. 1976)).

In *Hayward v. Gaston*, 542 A.2d 760 (Del. 1988), the Supreme Court of Delaware noted that "[a] variance request, in itself, is an indication that the intruding governmental entities respects [*sic*] the underlying purpose of zoning regulation." *Hayward*, 542 A.2d at 767 n.3. More recently, the Supreme Court of Alaska likewise noted that "the court will not resolve conflicts under the balancing test unless the state has made a reasonable good faith attempt to comply with local zoning laws." *Native Village of Eklutna v. Alaska Railroad Corporation*, 87 P.3d 41, 55 (Alaska 2004). Such a requirement serves to encourage the resolution of zoning disputes outside of the courts, and it also assures the development of a record that would provide a basis for the balancing of the interests in the event that the matter proceeds to Superior Court.

As such, assuming the state gains approval from the State Planning Council on the issue of conformity with a municipality's comprehensive plan, the state must then apply to the local zoning

---

[9] Our research reveals that, of the fourteen other jurisdictions that have adopted the balancing-of-interests test, only one jurisdiction expressly rejected the notion that a state agency must apply to the local zoning board for a variance or special use permit before the court balanced the interests. *See City of Bridgeton v. City of St. Louis*, 18 S.W.3d 107, 112 (Mo. Ct. App. 2000) ("We find it is not necessary for St. Louis to exhaust administrative remedies before asking the court in its counterclaim to determine immunity."). Another court did not reach the issue of application to the zoning board; however, it did not expressly reject the notion. *See generally Independent School District No. 89 of Oklahoma County v. City of Oklahoma City*, 722 P.2d 1212 (Okla. 1986).

board of review, utilizing the process set forth in the Zoning Enabling Act of 1991, chapter 24 of title 45 of the general laws, sections 27 through 72, to obtain zoning relief for its proposed project. Notably, the Zoning Enabling Act does not carve out an exemption from its application process for state agencies, nor does it carve out an exception for state agencies with regard to judicial enforcement. *See* G.L. 1956 § 45-24-57(1)(iv), (v) (authorizing the zoning board of review to authorize, upon application, variances and special-use permits); § 45-24-58 (establishing the application procedure to seek relief from a zoning ordinance); § 45-24-62 (indicating that the courts may compel compliance with the Zoning Enabling Act). Therefore, the state and its agencies are required to act in conformity with a municipality's zoning procedures.

Accordingly, we hold that, where there is a conflict between the state's proposed development and local land-use and zoning regulations, the state agency must first bring the project or development before the State Planning Council to pass upon the issue of compliance with the municipality's comprehensive plan. *See* § 45-22.2-10(g). If the State Planning Council approves the project, the state must then apply to the municipality's zoning board of review for zoning relief and act in conformity with the procedures set forth in the Zoning Enabling Act. Finally, if the parties remain in disagreement, an aggrieved party may file suit in the Superior Court, which will utilize the record from both the State Planning Council and the municipality's zoning board of review and apply *Blackstone Park*'s balancing-of-interests test to resolve the matter.

## IV

### Conclusion

For the reasons set forth herein, we vacate the judgment of the Superior Court and remand the case to that tribunal with instructions that the court (1) remand the case to the State Planning Council and (2) order the State Planning Council to, without delay, conduct the formal

administrative hearing concerning the state's compliance with the towns' comprehensive plans, as

the plans existed at the time each town filed suit in Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Town of Exeter, by and through its Solicitor, James P. Marusak v. State of Rhode Island et al.<br><br>Town of Richmond, Rhode Island v. State of Rhode Island et al. |
| **Case Number** | No. 2018-274-Appeal.<br>(PC 17-1549)<br><br>No. 2018-307-Appeal.<br>(PC 17-1666) |
| **Date Opinion Filed** | April 29, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Petitioners:<br><br>James P. Marusak, Esq.<br>Karen R. Ellsworth, Esq. |
| | For Respondents:<br><br>Sean Lyness, Esq.<br>Department of Attorney General |

SU-CMS-02A (revised June 2016)