TILCON GAMMINO, INC.

v.

COMMERCIAL ASSOCIATES et al.

No. 88–490–Appeal.

Supreme Court of Rhode Island.

Feb. 26, 1990.

John R. Fornaciari, Washington, D.C., Louis V. Jackvony, Jr., Providence, for plaintiff.

Gerard R. Visconti, David M. Campbell, Visconti & Petrocelli, Providence, for defendants.

## OPINION

MURRAY, Justice.

This case comes before us on the respondents' appeal from a Superior Court judgment entered after a seven-day bench trial pursuant to a petition to enforce a mechanics' lien. The respondents raise several issues on appeal. The respondents allege that the trial justice erred in computing the amount due to the petitioner. The respondents assert that in computing the amount due to the petitioner, the trial justice was incorrect in determining the types of contracts in effect. In addition the respondents allege that the petitioner was liable for the reimbursement to subcontractors for rock excavation. The respondents further challenge the court's computations by asserting that the justice allowed petitioner's claims that were not within the mechanics' lien period.

The respondents raise other issues on appeal which challenge several of the trial justice's rulings on pretrial motions. They assert that the trial justice erroneously denied respondents' motion to dismiss petitioner's lien petition for failure to particularize. They also claim that the trial justice erred in finding that respondents were not entitled to a jury trial. In addition respondents claim that the trial justice abused his discretion in denying respondents' motion to file a counterclaim.

The trial justice made his findings after observing eight witnesses. On appeal this court reviewed the four-volume record of testimony, several supplemental and reply briefs, the trial justice's twenty-eight-page opinion, his eight-page supplemental decision, and exhaustive oral arguments. After considering all the evidence, we have come to the firm conclusion that the trial justice in this case was absolutely correct

in all his rulings and in awarding petitioner $1,329,207.

The court found the following facts. On February 5, 1985, Tilcon Gammino, Inc. (Tilcon), a contracting company that performs construction work, commenced site clearing of an area designated to be the Bald Hill Plaza Shopping Center in Warwick, Rhode Island. Work commenced on the shopping center at the direction of respondent Commercial Associates (Commercial). At this time there were no plans or specifications for the design of the shopping center or its utility lines. All that existed was a general "overview" of the proposed construction site.

On February 8, 1985, Thomas D. Gammino, a Tilcon vice president, entered into a written contract with three general partners of Commercial, including one Anthony J. DelVicario. Although the contract gave control over the site work to Tilcon, DelVicario assumed authority to speak for Commercial at the Bald Hill site. DelVicario managed and directed the site work daily.

In general, work progressed without regard to the terms of the contract. The contract was continually amended by oral agreements between Gammino of Tilcon and DelVicario of Commercial. DelVicario requested overtime work, extra equipment, extra materials, and the shifting of work crews from one part of the site to another. He would order different equipment for the job when he was unsatisfied. Tilcon honored these requests because DelVicario had promised that Commercial would pay for all the work he directed to be performed.

Another change implemented by DelVicario was the substitution of the subcontractor Western Mass Blasting (Western) for the Delfino Corporation (Delfino). Originally Tilcon had hired Western to do the drilling and blasting of ledge on the project for $4.75 per cubic yard of mass ledge and $13 per cubic yard for trench ledge. When the parties realized that there was substantially more ledge to be drilled and blasted than originally believed, DelVicario wanted to hire a subcontractor to perform the work for less money. DelVicario then fired Western and negotiated an oral contract with Delfino for $4.10 per cubic yard for all ledge. DelVicario supervised and directed all Delfino's drilling and blasting work. Commercial then began paying Delfino directly.

DelVicario's additional requests were motivated to a large extent by an agreement formed between Commercial and Lechmere, Inc. (Lechmere). Lechmere had agreed to be the primary anchor store for the Bald Hill Plaza Shopping Center. According to Lechmere's agreement with Commercial the building pad had to be completed by March 15, 1985, so that the shopping plaza could be completed by October 1985. This agreement created a time problem because as of December 1984 the site was still high ledge and dense forestland.

Tilcon prepared and submitted to DelVicario nine bills (pay estimates) to be approved by DelVicario, and submitted to Commercial for payment. Six of the pay estimates were submitted to DelVicario, approved by him, and paid by Commercial. Two other pay estimates (Nos. 7 and 8) were approved by DelVicario and not paid. One pay estimate (No. 9) was neither approved nor paid.

Commercial's refusal to pay the three pay estimates was based on the assertion that certain "extras" were actually within the scope of work to be performed. Commercial claimed that the February 8 agreement, as amended by a May 8, 1985 letter sent by Gammino to Commercial, established a "guaranteed maximum price" of $3,095,000 for all the contract work done by Tilcon on the project. Therefore, Commercial claimed, those "extras" for which Tilcon sought payment were actually items that were included within the scope of work to be performed defined in the February 8 contract.

On February 7, 1986, Tilcon filed a petition to enforce a mechanics' lien in the Superior Court for Kent County pursuant to the Rhode Island Mechanics' Lien Statute, G.L.1956 (1984 Reenactment) chapter 28 of title 34. Tilcon sought to recover for labor, equipment and materials furnished to the respondents Commercial and Lech-

mere, for the construction of respondents' shopping center.

In considering respondents' appeal of the justice's determination of the amount due to petitioner, we must review the trial justice's findings of fact. We have consistently ruled that findings of fact made by the Superior Court "will not be disturbed on appeal unless it is shown that the trial justice misconceived or overlooked relevant evidence or was otherwise clearly wrong." E.g., In re Randy B., 486 A.2d 1071, 1073 (R.I.1985). No such finding can be made in this case. Instead, we affirm the findings of fact of the trial justice and commend his thorough evaluation of voluminous evidence in deriving them.

The trial justice found that up until May 8, 1985, Tilcon agreed to work on a cost-plus basis. In making this finding, the trial justice considered the testimony of Gammino that he and DelVicario agreed that Tilcon would do the work on a cost-plus basis. Gammino's testimony was corroborated by the behavior of the parties which was inconsistent with a guaranteed-maximum-price contract. As we stated in the facts above, DelVicario assumed total control over the project. His control over the project, to which Tilcon consented, obstructed Tilcon's ability to protect itself under a guaranteed-maximum-price contract. The trial justice found that Tilcon would not have consented to relinquishing control over the project if the parties had not agreed to a cost-plus contract.

The court also found it to be "inconceivable" that Tilcon would lock itself into a guaranteed-maximum-price figure in light of the fact that no sufficient site and construction plans and work specifications were available at that time. Tilcon had at best only a general idea of the type of work expected of it. Without construction plans, any price figure given could only have been a mere estimate.

■ In regard to that period after May 8, 1985, the trial court found that the $3,095,000 figure that appeared in correspondence constituted a guaranteed-maximum price only for the contract work done subsequent to May 8, 1985. Commercial's failure to act confirms this finding. Commercial Associates never informed Tilcon that it considered the $3,095,000 to be a guaranteed-maximum price for all the contract work performed, that Tilcon was exceeding the agreed maximum price, or that Commercial Associates was not going to pay more than $3,095,000. In addition the trial justice observed that it would have been irrational for Gammino to give a low figure for a guaranteed-maximum price on May 8, 1985, when Tilcon had already received the construction plans. As an expert at trial testified, the value of the work reflected on the April 17, 1985 plans exceeded $5 million. In light of this uncontroverted testimony, Gammino would have given a price exceeding the projected value of the work to be performed if this figure was intended to be a maximum price for all contract work to be performed.

■ In computing the amount due petitioner, the Superior Court found that Commercial and not Tilcon was responsible to pay for certain rock excavation work performed by Delfino. Commercial, therefore, had no right to attempt to back-charge Tilcon for payments Commercial made to Delfino. Tilcon had originally contracted with Western to perform the ledge drilling and blasting. Tilcon submitted pay estimates to Commercial for the charges by Western for the work. DelVicario soon realized, however, that there was more ledge to be drilled and blasted than originally believed. He then decided that the price charged by Western was too high. He therefore fired Western and hired Delfino to do the work for substantially less money.

Tilcon was not a party to Commercial's contract with Delfino. DelVicario directly supervised all of Delfino's drilling and blasting. Delfino contracted directly with Commercial via its representative, DelVicario. Commercial consented to DelVicario's authority when it issued checks made out solely to Delfino for drilling and blasting. Delfino separately and directly billed Commercial for the drilling and blasting.

Gammino of Tilcon did all he could to clarify and confirm the status of the par-

ties' relationship after Commercial fired Western. He unequivocally stated to Commercial that ledge drilling and blasting was no longer part of his work. Gammino refused to sign Commercial's check when Commercial attempted to change its practice of issuing checks directly to Delfino and made a check out jointly to Tilcon and Delfino. DelVicario then had a new check issued solely to Delfino. Moreover, Gammino sent a letter to Commercial on July 8, 1985, stating that "Delfino Corporation is a subcontractor for Commercial Associates." DelVicario never replied to this letter, although he did acknowledge receipt of this letter. These facts substantially support the justice's finding that Tilcon was not responsible for paying Delfino. Commercial could not, therefore, charge Tilcon for the drilling and blasting work performed by Delfino.

The respondents also object to the trial justice's findings as to the value of the labor, materials, and equipment furnished by Tilcon during the lien period. This court, however, finds that the trial justice was precise in making his value determination and that he excluded those claims not within the 120-day lien period. The judgment is clearly fair and reasonable.

The Superior Court carefully calculated the cost of the contract work performed during the lien period, the extra work performed by Tilcon during the lien period, and a service fee owed to Tilcon. Although Tilcon submitted pay estimates Nos. 7, 8, and 9, the trial justice made considerable deductions for claims arising prior to the lien period. Each deduction was carefully spelled out in the trial justice's calculations and is attached to this decision. (*See* Appendix.) The court then added a sum for extras and a service fee to the amount due and arrived at a total of $1,329,207.03 after meticulously sorting out those claims covered by the mechanics' lien statute from those that are not.

We now address the trial justice's rulings denying several of respondents' pretrial motions. The respondents claim that the trial justice erroneously denied their May 29, 1987 motion to dismiss Tilcon's lien petition for failure to provide adequate particularization pursuant to § 34–28–13. The petitioner refutes this assertion and claims that the respondents were well aware of the labor, equipment, and materials charges for which Tilcon claimed a lien. In addition, petitioner argues that respondents waived any objection to the lien petition for lack of particularity. We find that the intention to claim a lien was sufficiently particularized and therefore do not decide whether respondents waived their objection.

■ The respondents argue that a "liberal construction" of the lien statute should not be allowed to prejudice an owner's defense in this action. Failure to particularize, however, is not a jurisdictional defect. *Kelley v. Dunne*, 112 R.I. 775, 316 A.2d 341 (1974). As this court stated long ago in *Murphy v. Guisti*, 22 R.I. 588, 590, 48 A. 944, 944 (1901), particularization is required in a petition to give notice to the parties "of the nature and extent of the account or demand for which the lien is sought."

■ We fail to see how respondents could have possibly been prejudiced any way whatsoever by the degree of particularization of the lien. During the course of the project, petitioner submitted nine pay estimates to respondents which clearly set out Tilcon's claims for labor, equipment and materials furnished by Tilcon at DelVicario's request. These pay estimates set forth the specific rates and charges for each item claimed and the dates upon which each item was furnished. The pay estimates alone provided respondents with all the information as to what was claimed in the lien petition even before any lien petition was filed.

We find that respondents were fully advised of all Tilcon's possible claims when respondents filed a motion to dismiss for failure to particularize. Not only did respondents have possession of the three pay estimates, but respondents also had sixteen months in which to conduct discovery. They served interrogatories upon Tilcon and received full responses to their requests. They also conducted several depositions. The trial justice was therefore cor-

rect in denying respondent's motion to dismiss.

■ The respondents also appeal the trial court's denial of their motion for trial by jury. The respondents claim that because legal issues were involved, Article 1, section 15 of the Rhode Island Constitution and Rule 38 of the Superior Court Rules of Civil Procedure require that the matter be submitted to a jury for resolution. In sum, respondents claim that a written contract defines both parties' obligations and that this case is therefore actually a disguised breach of contract case.

According to respondents, a claimant seeking a mechanics' lien usually lacks privity with the owner of the property. The respondents claim that this fact illustrates an underlying purpose of the mechanics' lien statute: "to benefit subcontractors and materialmen who have performed labor and provided materials in the improvement of an owner's real property." First we must assert that the frequency of an occurrence has no bearing on the Legislature's intent in creating a statute. Second the language of the mechanics' lien statute refutes both assertions of respondents: (1) that the existence of a written contract transforms this action from an equitable proceeding to a legal proceeding for breach of contract and (2) that the mechanics' lien statute was enacted for subcontractors who are not in privity of contract with the owners.

This court has long ago held that a mechanic's lien proceeding is an equitable in rem proceeding. *Hunt v. Darling,* 26 R.I. 480, 59 A. 398 (1904). The true respondent, therefore, is the land upon which the lien attaches. The existence of a written contract between the parties does not change the nature of the proceeding. If the action is brought under the mechanics' lien statute, then "the court shall, by itself or by a master to be appointed by it for that purpose, proceed to ascertain the exact nature and amount of each claim on such property or any part thereof." Section 34–28–21. Such equitable proceedings have always been tried before a justice sitting without a jury.

The mechanics' lien statute was designed to prevent unjust enrichment by one person at the expense of another. *Faraone v. Faraone,* 413 A.2d 90 (R.I.1980); *Art Metal Construction Co. v. Knight,* 56 R.I. 228, 185 A. 136 (1936). Despite respondents' assertion, the mechanics' lien was not intended as a remedy for those lacking privity of contract. Section 34–28–1 states that the mechanics' lien applies to land that

"shall stand subject to liens for *all the work done by any person* in the construction, erection, alteration or reparation of such building, canal, turnpike, railroad or other improvement, and for the materials used in the construction, erection, alteration or reparation thereof, which have been furnished *by any person.*" (Emphasis added.)

The statute makes no special reference to subcontractors or those not in privity of contract. In fact the statute specifically states that a mechanics' lien action is not intended as an exclusive remedy for those unable to seek a remedy at law. Section 34–28–33. Oftentimes a mechanics' lien could be sought for materials furnished during the 120-day lien period and then a suit on the contract would also be brought for the balance due.

■ The respondents also claim that a legal counterclaim raised by respondents should recharacterize the action from an equitable proceeding to an action at law demanding a right to a jury trial. In this case the trial justice did not allow respondents' counterclaims. Therefore, there were actually no legal counterclaims in the case at bar. For those who may in the future file timely counterclaims, however, we address this issue concerning the right to a jury trial in light of this additional circumstance.

A respondent opting to file a counterclaim in the equitable proceeding cannot then convert the equitable action filed by the petitioner. The respondents have the choice of proceeding with their counterclaim in the equitable proceeding or reserving the claim and bringing a separate suit for breach of contract at law. The respondents cannot assert that their rights to a

jury trial are being denied when the option of filing an independent action is readily available to them.

■ Now we turn to respondents' claim that the Superior Court abused its discretion in denying respondents' motion to file a counterclaim. The respondents filed a motion to amend their answers to add counterclaims February 13, 1987, ten months after Commercial and Lechmere filed their original answers to Tilcon's lien petition. This motion was filed four days after the Superior Court scheduled a trial on the lien claim for April 1, 1987. The petitioner contends that the request to amend pleadings constituted an attempt to delay the scheduled hearing. The respondents do not address this charge, nor have they offered any explanation for the delay in waiting ten months after their answer to move to amend to add counterclaims.

In light of these facts we find that the Superior Court did not abuse its discretion in denying respondents' motion to amend their answers. Rule 13(f) provides that:

> "*Omitted counterclaims.* When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."

In this case no excuse was advanced for why the original answer failed to set out counterclaims. The record reveals no oversight, inadvertence, or excusable neglect that would justify reversing the justice's denial of the motion to file a counterclaim. In fact all evidence suggests that the counterclaims were not only used for delay but were also not supported by the facts as revealed at trial. Commercial's own representative, DelVicario, testified that Tilcon performed all required work and that he was not aware of anything that Tilcon failed to do on the job.

Moreover the record does not reveal that justice required the trial court to allow the respondents to amend their answers. The respondents were in no way prejudiced by the denial of the motions. Evidence of the respondents' dissatisfaction with Tilcon's performance under the contract was allowed to be introduced as evidence to set off or diminish Tilcon's claim. The respondents also had the option of filing an action at law for breach of contract against Tilcon. In fact the respondents concede that Commercial has in fact filed its claims against Tilcon in Federal Court.

For the foregoing reasons we find the respondents' claims to be without merit. Therefore, the respondents' appeal is denied and dismissed and the judgment entered in Superior Court is hereby affirmed.

## APPENDIX

### APPENDED COMPUTATIONS

The following deductions were made from Pay Estimate #7:

Week ending 8/10/85
$47,632.32 (prior to lien period)

Week ending 8/17/85
$84,563.96 (prior to lien period)

Week ending 8/24/85
$ 1,552.25 Police overtime (Extra 1)

$ 1,260.00 Water truck, 28 hrs. @ 45.00 (Extra 2)
110.24 Gravel Fill 104 cy. @ 1.06 cy (Extra 2)
300.00 Ten Wheeler 6 hrs. @ 50.00 (Extra 2)
$ 2,600.00 Crane operator (Extra 13)
$ 4,015.18 7 trucks-gravel (Extra 13)

Week ending 8/31/85
$ 1,880.40 Police overtime (Extra 1)
391.50 repairs to 8" water main (Extra 2)

Total deductions from Pay Estimate #7  =  $144,305.85

The following deductions from Pay Estimate #8 were made:

Week ending 9/7/85
$ 181.00 Police overtime (Extra 1)

Week ending 9/14/85
$ 3,500.00 asphalt—Rt. 2 125 tons @ 28.00 (Extra 7)
$ 3,880.00 loam—retention basin (Extra 7)
$ 2,462.40 Police overtime (Extra 1)

Week ending 9/21/85
$ 2,497.95 Police overtime (Extra 1)
$ 4,300.00 loam—retention basin (Extra 7)
$ 8,590.40 Extra asphalt Rt. 2 (Extra 9)
$ 2,244.80 crushed stone-traffic island (Extra 8)
$ 992.00 loam—Lechmere—Rt. 2 (Extra 0)
$ 360.00 water truck (Extra 2)
$ 1,189.60 crushed stone-traffic island (Extra 8)
$ 992.00 crushed stone-traffic island (Extra 8)
$ 3,512.00 loam and delivery (Extra 7)
$ 2,740.80 crushed stone-traffic island (Extra 8)

Week ending 9/28/85
$ 1,458.40 Police overtime (Extra 1)
$ 7,836.80 crushed stone-traffic island (Extra 8)

Total deductions from Pay Estimate #8   =   $46,738.15

The following deductions were made from Pay Estimate #9:

Week ending 10/6/85
$15,730.40 Extra asphalt—Rt. 2 (Extra 9)
$ 3,520.80 crushed stone (Extra 8)

Week ending 10/19/85
$ 1,920.00 Tilcon personnel 64 hours (Extra 10)
@ 30.00 hour
$ 4,320.00 For 235 Cat. 32 hrs. @ 1.35 hr. (Extra 10)

Total deducted from Pay Estimate #9   =   $25,491.20

SUMMARY