## DeSIMONE ELECTRIC, INC.

v.

## CMG, INC., et al.

No. 2004–268–Appeal.

Supreme Court of Rhode Island.

June 29, 2006.

Michael R. DeLuca, Esq., Providence, for Plaintiff.

Albert R. Romano, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The plaintiff, DeSimone Electric, Inc., appeals from a Superior Court judgment denying its petition to enforce a mechanic's lien and awarding the defendants, CMG, Inc., Ashford Homes, LLC, and James Colucci, damages on their counterclaims for breach of contract and negligence. The plaintiff contends that the trial justice erred in finding the mechanics' lien statute, G.L.1956 chapter 28 of title 34, unconstitutional and in denying its petition to enforce. The plaintiff also avers that the trial justice was clearly wrong and overlooked or misconceived evidence in her findings concerning the defendants' counterclaims.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After considering the written and oral submissions of the parties and examining the record, we are of the opinion that the issues raised in this appeal may be resolved without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Procedural History

The present dispute arose over two contracts between plaintiff and defendants. One of the contracts was created when James Colucci, in his capacity as president of CMG, Inc., hired plaintiff, DeSimone Electric, Inc., an electrical contractor, to do work on eight lots at City View Highlands Estates in Johnston, Rhode Island (the City View project). The parties orally agreed that plaintiff would complete the "basic" or "rough" wiring at each lot for a fixed price of $2,750 per lot.[1] To receive payment for the work it did on the City

---

1. More specifically, the rough wiring job included doing the following on each lot: (1) installing a 100 amp. overhead service; (2) wiring three bedrooms; (3) wiring one bathroom; (4) bringing power to the appliances and furnace; (5) installing circuit breakers;

View project, plaintiff would submit an invoice upon completion of the rough phase of the electrical work, and CMG–Ashford[2] would pay, usually within a week or two. The owner of DeSimone Electric, Alberto DeSimone, testified that CMG–Ashford never exceeded two or three months on a payment.

The plaintiff began work on the City View project at the end of 2000 and discontinued labor on July 17, 2001. Mr. DeSimone testified that CMG–Ashford owes the plaintiff corporation $4,795 for work done on five of the eight lots. Mr. DeSimone admitted that the plaintiff corporation did not complete work on all the lots, but he said that it stopped working because it was not receiving payment.

CMG–Ashford asserts, however, that the expenses it incurred to complete or fix plaintiff's electrical work, combined with resulting delays, additional management costs, and finance charges, exceeded the amount that plaintiff claims it is due. Specifically, CMG–Ashford maintains that plaintiff owes it $31,208.08 for management and supervision costs that resulted from being forced to review and correct plaintiff's work, dealing with the realtor and town inspectors during the delay, and the compounded daily interest that CMG–Ashford paid to the bank on construction loans for the houses during the delay. James Colucci testified that he spoke to Mr. DeSimone "on a couple of different occasions" concerning the poor quality of plaintiff's work on the City View project and about the fact that plaintiff's work sometimes had not passed inspection. He also chided plaintiff for not always cleaning up the site after work. He further testified that it was particularly important that plaintiff's electrical work be finished in a timely manner so that other trades could follow with their portions of the work. James Colucci testified that Mr. DeSimone "worked with [defendants] long enough that he knew to keep up with the other trades." Nonetheless, he said that he had to hire other contractors to complete the electrical work when plaintiff refused to return to the job. Thomas Colucci, James Colucci's brother and an employee of CMG–Ashford, also testified that plaintiff left the work site "unclean" and did not finish the rough wiring according to plan. He said that he spoke to Mr. DeSimone about his dissatisfaction in the spring or early summer of 2001.

Karen Rainone, the former office manager of CMG, testified that she took phone calls from Mr. DeSimone during which he expressed his desire to be paid before completing additional work. She also said that she remembered hearing complaints about plaintiff and other subcontractors concerning their failure to clean up after themselves at the City View project work

and (6) wiring the kitchen with three recessed lights, plugs, and switches. The contract price did not include "extras" that a homeowner might request as the work proceeded. When plaintiff finished the rough wiring on each lot, other contractors were to sheetrock and plaster the walls on the lots, after which plaintiff was to go back and install all devices and fixtures to complete the job.

**2.** James Colucci is the president and sole shareholder of CMG, Inc., the defendant site development company that owned, developed, and served as general contractor for the City View project. James Colucci is also a member of Ashford Homes, LLC, which is a limited liability construction company and a sister corporation of CMG. James Colucci testified that Ashford Homes had no connection with the City View project. However, Alberto DeSimone, the owner of DeSimone Electric, testified that he submitted some invoices to Ashford Homes as well as to CMG and the record shows that plaintiff occasionally received payments from Ashford Homes. We refer to the two entities, therefore, collectively as "CMG–Ashford."

site. She testified that her job sometimes required her to inform subcontractors when their work did not pass inspection. Although Ms. Rainone first stated that she did not recall a failed inspection concerning plaintiff's work, she later testified on cross-examination that she communicated with plaintiff on at least one occasion concerning a failed inspection on the City View project.

The other contract disputed in this case was created when Mr. DeSimone and James Colucci orally agreed that plaintiff would do electrical work on James Colucci's private home on Iroquois Trail in Glocester, Rhode Island (the Iroquois Trail project). The plaintiff worked on the Iroquois Trail project from August 2000 until February or April of 2001. James Colucci testified that plaintiff's work on the Iroquois Trail project already had begun when the City View project commenced. The parties presented conflicting testimony concerning the price specified in the oral agreement for the Iroquois Trail project. Mr. DeSimone testified that he and James Colucci agreed that the price was "not to exceed" $9,500. James Colucci, on the other hand, testified that he agreed to pay plaintiff a flat price of $6,800. Thomas Colucci also testified that the price was $6,800. In addition, the record reflects an electrical permit application in which plaintiff listed $5,000 as the "ESTIMATED COST OF COMPLETED INSTALLATION" for the Iroquois Trail project. Mr. DeSimone testified, however, that this was only a "rough estimate," that he wrote the $5,000 amount to save money on the permit fee, and that he filled out the permit application before knowing the extent of the work to be done on the Iroquois Trail project.[3] Mr. DeSimone could not remember whether he ever submitted an amended electrical permit application to the Town of Glocester reflecting a more "accurate" estimate.

Mr. DeSimone testified that the plaintiff corporation had performed $9,410 worth of the work on the Iroquois Trail project when it ceased labor. It is undisputed that plaintiff received $6,000 over four payments from James Colucci for the contract. Mr. DeSimone contends that the plaintiff corporation still is owed the balance of $3,410 for the work completed, even though he admitted that "the house wasn't completed a hundred percent." James Colucci testified, however, that plaintiff's work on the Iroquois Trail project was only about 80 to 85 percent done when plaintiff stopped work. James Colucci also said that although he was satisfied with the work that plaintiff did finish at the Iroquois Trail project "[f]or the most part," there were several problems with the work, including jobs that were not completed or were done incorrectly, so that other contractors had to be hired to fix plaintiff's work. Accordingly, James Colucci alleges that he need not pay plaintiff anything more for the Iroquois Trail project because plaintiff owes him $2,590 in damages caused by plaintiff's substandard or incomplete work.

On or about July 19, 2001, James Colucci and his two brothers met with Mr. DeSimone at Birchwood Estates, a third possible project site. James Colucci testified that the purpose for the meeting was to discuss the completion of the City View project, but Mr. DeSimone said that the meeting was held to establish when plain-

---

**3.** Mr. DeSimone testified that the $5,000 estimate listed on the electrical permit application was not meant to be a "definite" or "accurate" estimate of the actual contract price because there were no blueprints or electrical layouts yet drawn and he and James Colucci had not yet walked through the house to designate what electrical work needed to be done.

tiff's work on the new Birchwood Estates development would begin. At the meeting, Mr. DeSimone informed the Coluccis that plaintiff would not start a new project or finish the City View or Iroquois Trail projects without further payment for those projects. According to James Colucci, he in turn told Mr. DeSimone that there were problems with plaintiff's work. An argument ensued, and plaintiff never returned to work.

On July 20, 2001, James Colucci sent a letter to plaintiff advising it that CMG–Ashford expected plaintiff to return and complete the electrical work on the City View project in a timely manner or CMG–Ashford would be forced to hire another subcontractor to complete the work and "back-charge" plaintiff for the completion. The letter informed plaintiff that it was "behind schedule and holding up progress" on Lots 3, 4, 5, and 7. On the same date, plaintiff filed notices of intention to claim liens on five lots at the City View project for which plaintiff alleged it was not fully paid.

On November 16, 2001, the parties stipulated that CMG–Ashford would file a bond in the amount of $5,090, thereby making it unnecessary for plaintiff to file a notice of *lis pendens,* and plaintiff filed a petition to enforce a mechanic's lien against the bond pursuant to chapter 28 of title 34, the Rhode Island mechanics' lien statute.[4] On December 7, 2001, defendants answered and counterclaimed, alleging that plaintiff had breached the oral contracts and that the work done on both sites was negligent and not performed in a workmanlike manner. On January 4, 2002, the Superior Court allowed plaintiff to file an amended petition adding a second count against James Colucci for breach of contract with respect to the Iroquois Trail project. The defendants answered the amended petition on January 29, 2002, and they included counterclaims alleging negligence and breach of contract with respect to each of the two contracts.

■ A trial justice of the Superior Court heard the case in January 2003.[5] After hearing extensive evidence, the trial justice ruled that the Rhode Island mechanics' lien statute was unconstitutional because it violated procedural due process, even in light of a then recent amendment intended to address such concerns. Accordingly, the trial justice dismissed plaintiff's petition to enforce its mechanic's lien. The trial justice further found that, although the parties had created an enforceable oral contract for $6,800 for the Iroquois Trail project, plaintiff could not recover because it had not substantially performed under the contract.

---

4. The defendants filed the bond pursuant to G.L.1956 § 34–28–17, which states in part that:

"At any time after the recording of a notice of intention or after the filing of a petition to enforce a lien * * *, the owner or lessee or tenant of the land described in the notice or petition may pay into the registry of the court in the county in which the land is located cash equal to the total amount of the notice of intention and the accounts and demands of all persons claiming liens therein * * *, including costs of the lien holder, or may, in lieu of cash, deposit in the registry of the court the bond of a surety company licensed to do business in this state in the total amount running to all persons claiming liens * * *."

5. This case was heard without a jury. This Court always has maintained that "a mechanic's lien proceeding is an equitable in rem proceeding" that is to be "tried before a justice sitting without a jury." *Tilcon Gammino, Inc. v. Commercial Associates,* 570 A.2d 1102, 1107 (R.I.1990); *see also* § 34–28–21. This is true even when the respondent decides to file counterclaims, as defendants did in the present case. *See Tilcon Gammino, Inc.,* 570 A.2d at 1107–08.

In addressing defendants' counterclaims, the trial justice found that plaintiff breached both its contract with James Colucci for the Iroquois Trail project and its contract with CMG–Ashford for the City View project. The trial justice further found that plaintiff breached its duty to perform skillfully, carefully, diligently, and in a workmanlike manner under both contracts, constituting negligence. The Superior Court awarded defendants $10,666 in damages for the costs expended on permits and in hiring outside parties to finish or correct work at the two project sites. The trial justice, however, denied defendants' claims for management and supervision fees and interest, finding that defendants had failed to prove those damages to a reasonable degree of certainty. Judgment was entered on March 3, 2004. The plaintiff filed a notice of appeal on March 22, 2004.

## Discussion

### Mechanics' Lien Statute

■ The plaintiff first argues that the trial justice was clearly wrong in finding that the Rhode Island mechanics' lien statute was unconstitutional. The mechanics' lien statute has long been a source of uncertainty within the legal profession in this state. *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 802 (R.I.2005). The statute's intended purpose is to "afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches." *Id.* at 803 (quoting *Field & Slocomb v. Consolidated Mineral Water Co.*, 25 R.I. 319, 320, 55 A. 757, 758 (1903)). "The law was 'designed to prevent unjust enrichment of one person at the expense of another.'" *Id.* (quoting *Art Metal Construction Co. v. Knight*, 56 R.I. 228, 246, 185 A. 136, 145 (1936)).

■ In *Gem Plumbing & Heating Co.*, this Court addressed the constitutionality of the mechanics' lien statute. After an extensive balancing of private and state interests, we held that the mechanics' lien statute, as amended by § 34–28–17.1,[6] did

---

6. We concluded in *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 805 (R.I.2005), that § 34–28–17.1, enacted on July 17, 2003, by P.L.2003, ch. 269, § 1, "significantly enhanced the rights of a property owner facing a mechanic's lien." In relevant part, § 34–28–17.1(a), as amended by P.L.2004, ch. 402, § 1 provides:

"**Dismissal of petition for other cause.**— (a) If any person in interest, including, but not limited to, an owner or contractor, claims: (1) that any person who has provided labor, materials or equipment or has agreed to provide funding, financing or payment for labor or materials or equipment refuses to continue to provide such funding, financing or payment for labor materials solely because of the filing or recording of a notice of intention; or (2) it appears from the notice of intention that the claimant has no valid lien by reason of the character of or the contract for the labor, materials or equipment and for which a lien is claimed; or (3) that a notice or other instrument has not been filed or

recorded in accordance with the applicable provisions of 34–28–1 et seq.; or (4) that for any other reason a claimed lien is invalid by reason or failure to comply with the provisions of 34–28–1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor. A mortgage holder or servicer is not a necessary party under this section and shall not be named as a party in any such application or order of notice." Section 34–28–17.1(b) adds that such a showcause order "shall be served upon the necessary parties no later than one week prior to the date of the scheduled hearing."

In interpreting this amendment to the mechanics' lien statute, this Court found that it "demonstrate[d] a clear legislative intent to grant a property owner a *prompt* post-deprivation hearing" and that it provided "a service timeline that is faster than for a run-of-

not violate procedural due process. *Gem Plumbing & Heating Co.*, 867 A.2d at 818. The trial justice in the present case, however, was without the benefit of this Court's 2005 holding in *Gem Plumbing & Heating Co.* when she rendered her decision in 2003. The trial justice recognized that the appeal in *Gem Plumbing & Heating Co.* still was pending at the time of the present case's trial, and, after conducting her own analysis, she ruled that the mechanics' lien statute was unconstitutional, even as amended by § 34–28–17.1.

The trial justice's ruling in this case clearly is not consistent with this Court's holding in *Gem Plumbing & Heating Co.* We dealt with a similar, but distinguishable, scenario in *F.C.C., Inc. v. Reuter*, 867 A.2d 819 (R.I.2005), heard and issued on the same day as *Gem Plumbing & Heating Co.* In *Reuter*, the lower court granted the defendants' motion for summary judgment in a dispute over a construction contract because it found that the mechanics' lien statute was unconstitutional. *Reuter*, 867 A.2d at 820. Although the lower court made no reference to the amendment to the statute, this Court noted that the enactment of § 34–28–17.1 became effective two months before the hearing at which summary judgment was granted and applied retroactively to that case. *Reuter*, 867 A.2d at 822. On appeal, we reversed the trial justice's ruling based on our decision in *Gem Plumbing & Heating Co.* and reaffirmed our holding that the statute was constitutional as amended. *Reuter*, 867 A.2d at 822; *see Gem Plumbing & Heating Co.*, 867 A.2d at 818. We declined

to go further with our analysis of the parties' claims in *Reuter* and remanded the issue of whether the plaintiff fully complied with the statute to the trial court for further findings of fact. *Reuter*, 867 A.2d at 822–23.

In contrast, this Court need not remand the substantive issues in the present case. Today's case is distinguishable from *Reuter* because, in *Reuter*, the trial justice's decision to grant summary judgment to the defendants was based solely upon the trial justice's erroneous ruling that the mechanics' lien statute was unconstitutional. *Reuter*, 867 A.2d at 820–21. Because the trial justice decided to grant the defendants' motion for summary judgment in *Reuter*, he did not reach the question of whether the plaintiff had adhered to the statutory process for perfecting a lien. *Id.* A list of counterclaims asserted by the defendants also was not addressed or made the subject of the appeal. *Id.* at 820 & n. 3. Because the trial justice in *Reuter* did not articulate reasons beyond the constitutionality of the statute for granting summary judgment to the defendants, this Court addressed only his erroneous conclusion that the statute was unconstitutional and remanded the rest of the issues. *Id.* at 821–23.

■ Here, the trial justice based her decision upon other grounds that do not require a remand directive. This Court may "affirm[ ] the orders and judgments of a trial court when the reasons given by the trial court are erroneous in circumstances in which there are other valid reasons to support the order or judgment appealed

---

the-mill motion hearing." *Gem Plumbing Heating Co.*, 867 A.2d at 811–12. We further found in the statute a "clear intention that the Superior Court fast-track such hearings" and that they "be given priority on the Superior Court calendar so that property owners indeed may bring their challenges 'forthwith' and be heard 'forthwith.'" *Id.* at 812 (quoting

34–28–17.1(a)). Accordingly, we said that a property owner's right to a prompt post-deprivation hearing pursuant to the amendment afforded that property owner "considerable due process protection." *Gem Plumbing Heating Co.*, 867 A.2d at 812. This Court therefore held the statute constitutional as amended. *Id.* at 818.

from." *Levine v. Bess Eaton Donut Flour Co.,* 705 A.2d 980, 984 (R.I.1998) (quoting *Gross v. State, Division of Taxation,* 659 A.2d 670, 672 (R.I.1995)); *see also Jordan v. Jordan,* 586 A.2d 1080, 1085 (R.I.1991) (stating that this Court "will uphold a correct decision notwithstanding the reasoning upon which it rests"). The trial justice here did not base her decision solely upon her erroneous ruling that the statute was unconstitutional. Instead, she went on to address the breach of contract claim that plaintiff brought against James Colucci and defendants' counterclaims, and ultimately found that defendants were the ones who were owed money. We therefore need not remand this case despite the trial justice's erroneous ruling as to the statute's constitutionality; we may affirm if her findings on the other issues are sufficient to support the judgment.

### Breach of Contract and Negligence Claims

■ Accordingly, our next task is to determine whether the trial justice was erroneous in her findings on plaintiff's breach of contract claim and defendants' counterclaims. "It is well settled that the findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal absent a record showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Donnelly v. Cowsill,* 716 A.2d 742, 747 (R.I.1998). Moreover, "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Walton v. Baird,* 433 A.2d 963, 964 (R.I.1981). During his or her fact-finding process, the trial justice may "draw inferences from the testimony of witnesses, and such inferences, if reasonable, are entitled on review to the same weight as other factual determinations." *Id.* In this case, plaintiff asserts that the

trial justice overlooked or misconceived material evidence in favor of plaintiff when she found that plaintiff had breached both contracts with defendants and was negligent in its workmanship on both projects. The evidence to which plaintiff refers, however, was not uncontradicted at trial.

■ The trial justice found that plaintiff and James Colucci had a valid oral contract concerning the electrical work on the Iroquois Trail project. The plaintiff does not dispute this finding; but, plaintiff does dispute the price term in the oral contract, noting that plaintiff offered testimony that the price was "not to exceed" $9,500, while defendants asserted a fixed price of $6,800. The trial justice specifically found that the parties had mutually assented to a contract price of $6,800 for the Iroquois Trail project because she "[did] not find persuasive [Mr.] DeSimone's varied explanations for the $4,500 discrepancy between the price at which he estimated the installation on the permit fee [on the electrical permit application] and the price upon which he claims the parties agreed." The trial justice apparently found the testimony of James and Thomas Colucci, who both said that the contract was for $6,800, to be more credible than Mr. DeSimone's testimony. Because this credibility determination deserves deference, we are satisfied that the trial justice did not overlook or misconceive evidence when she decided that the price agreed upon for the Iroquois Trail project was $6,800.

■ The trial justice also found that plaintiff had failed to substantially perform the Iroquois Trail project contract and for that reason could not recover for a breach thereof. In so finding, the trial justice found credible James Colucci's testimony that 15 to 20 percent of the project was not finished when plaintiff ceased work. She also noted that although both parties testi-

fied that plaintiff had completed installing the 200 amp. service, rough wiring, all devices, and most of the fixtures, even Mr. DeSimone had conceded that the plaintiff corporation did not complete the job. Finally, the trial justice noted that James Colucci's $2,590 claim for damages for incomplete or unsatisfactory work, being comparably much lower than the agreed-upon price of $6,800, further demonstrated that plaintiff did not substantially perform. Based on this evidence, we are satisfied that the trial justice was not clearly wrong in determining that plaintiff had not substantially performed the contract for the Iroquois Trail project and thus could not recover on its breach-of-contract claim against James Colucci.

The plaintiff also challenges the trial justice's findings on defendants' counterclaims that plaintiff breached both contracts and was negligent in failing to perform the work at either site in a skillful, careful, and workmanlike manner. The plaintiff maintains that defendants fabricated the claims of shoddy workmanship because they lacked sufficient funds to pay plaintiff for the work already performed. To support this claim, plaintiff points to the meeting on July 19, 2001, as evidence that defendants still were willing to hire plaintiff to work on a third development, Birchwood Estates, despite their allegations of shoddy workmanship on the other two projects. Again, however, this evidence was counterbalanced with conflicting evidence at trial. James Colucci denied that he failed to pay plaintiff because of cash-flow problems. He also said that the purpose of the meeting on January 19, 2001, was not to discuss the Birchwood Estates project, but rather to discuss completion of the City View project.

The plaintiff also contends that the trial justice overlooked the testimony of Ms. Rainone when she said that she was not aware of any complaints about plaintiff. Similarly, Mr. DeSimone testified that he never received any complaints concerning either project until the day of his meeting at Birchwood Estates with defendants. It should not be overlooked, however, that Ms. Rainone also testified on cross-examination that she communicated with plaintiff concerning a failed inspection on at least one occasion. In addition, James Colucci testified that he made his concerns known to plaintiff and informed Mr. DeSimone when the electrical work failed inspections. Other evidence revealed that Ms. Rainone may not have been aware necessarily of all problems with contractors and that she did not leave her employment with CMG on good terms. We cannot say that the trial justice was clearly wrong in the manner in which she considered Ms. Rainone's inconsistent testimony in light of this additional evidence.

The trial justice also found that there was credible evidence of unsatisfactory workmanship, failed inspections, and untidiness in the testimony of James and Thomas Colucci and in a series of photographs depicting plaintiff's work that were admitted at trial. Specifically, in ruling that plaintiff had breached the contract and performed negligently on the Iroquois Trail project, the trial justice found that plaintiff failed to install certain wires in the correct places leaving wire visible, broke plaster around the edge of a light switch box leaving a visible chip in the plaster, failed to center certain fixtures, installed some fixtures crookedly and at uneven heights, left the worksite untidy, and improperly wired the burner located on the home's boiler. The trial justice also ruled that plaintiff was not diligent in completing the work on the Iroquois Trail project because the evidence supported her finding that plaintiff left 15 to 20 percent of the project unfinished.

Similarly, in finding that plaintiff also breached the contract and performed negligently on the City View project, the trial justice noted that a subcontractor whom defendants hired to complete and rectify plaintiff's work had listed a number of problems with plaintiff's work on an invoice he submitted to defendants. The trial justice also found that defendants had provided other evidence indicating that the lots on which plaintiff did perform had problems or failed inspections. This evidence included James Colucci's testimony that the work was "sloppy," correspondence to plaintiff informing it that the work was incomplete or unsatisfactory, and expenses incurred by defendants as a result of plaintiff's incomplete or defective work.

Additionally, the trial justice found that, "[i]n total, Plaintiff's work failed inspection at Lots 3, 5, 7, and 8." On appeal, plaintiff asserts that the trial justice overlooked or misconceived evidence showing that all inspections performed on plaintiff's work passed. James Colucci testified, however, that there were a couple of instances when plaintiff's work did not pass. Although plaintiff offered documentary evidence that its work on the Iroquois Trail project passed at least one fire inspection, defendants offered documentary evidence of failed inspections on Lots 3, 5, 7, and 8 of the City View project, as well as evidence that some of the lots had to be inspected again. The trial justice further found that the evidence demonstrated that plaintiff failed to work diligently on the City View project, based on James Colucci's testimony that plaintiff was late in initiating work on a couple of occasions and the July 20, 2001 letter from CMG–Ashford to Mr. DeSimone informing him that plaintiff was "holding up progress" on Lots 3, 4, 5, and 7.

Based on the conflicting evidence offered at trial that the trial justice thoughtfully considered throughout her decision, we are satisfied that the trial justice did not overlook or misconceive material evidence; nor was she clearly wrong in finding that the defendants were entitled to damages from the plaintiff. The trial justice simply carried out her task of determining which evidence was credible and which was not. *See Walton,* 433 A.2d at 964. She appropriately drew inferences from the testimony and evidence offered; and, finding those inferences to have been reasonable ones to draw, we afford her findings great weight. *See id.* Accordingly, we hold that the trial justice's findings were not clearly wrong, and we affirm her ruling in this case.

### Conclusion

For the reasons set forth herein, the judgment of the Superior Court is affirmed. The record shall be remanded to the Superior Court.