ALPHA OMEGA CONSTRUCTION,
INC.

v.

The PROPRIETORS OF SWAN
POINT CEMETERY and
E.W. Burman, Inc.[1]

No. 2007–339–Appeal.

Supreme Court of Rhode Island.

Dec. 19, 2008.

---

**1.** In *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 818 (R.I.2005), this Court noted that the Rhode Island Mechanics' Lien Law in its entirety, as set forth in G.L.1956 chapter 28 of title 34, and § 34–28–17.1 in particular, lacked clarity. Consequently, there has been confusion in the present case about the proper way to caption an action involving a show-cause hearing in accordance with the provisions of § 34–28–17.1. Section 34–28–17.1(a) permits a party wishing to challenge a mechanic's lien to "apply forthwith to the [S]uperior [C]ourt for the county where the land lies for an order to show cause," a process that affords an owner or contractor a *"prompt post-deprivation hearing." Gem Plumbing &*
*Heating Co.,* 867 A.2d at 811. Section 34–28–17.1(b) requires the application for such a hearing "be made upon a verified complaint accompanied by other written proof of facts upon which the application is made." Although this show-cause application is characterized as a "verified complaint," it is not a separate civil action and should be filed in the same action seeking enforcement of the mechanic's lien. Accordingly, the verified complaint and all subsequent filings should retain the original caption. If the party filing the verified complaint was not included in the original action, that party should be added as a defendant.

Roger LeBoeuf, Providence, for Plaintiff.

Christopher Whitney, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 31, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and we shall decide this appeal without further briefing and argument. We affirm the judgment of the Superior Court.

### Facts and Travel

This appeal seeks to revive an action to enforce a mechanic's lien resulting from

the construction of a mausoleum and chapel in Swan Point Cemetery (project) in Providence. The case was dismissed with prejudice by the Superior Court on July 2, 2007.

The Proprietors of Swan Point Cemetery (Swan Point) entered into a construction contract with E.W. Burman, Inc. (E.W. Burman), a general contracting company that is operated by Edward Burman (Burman). In turn, E.W. Burman subcontracted with Greenwich Northeast, Inc. (Greenwich), owned by John Abatecola (John),[2] for the project's masonry work. Fred Abatecola (Fred), John's brother, claims that Alpha Omega Construction, Inc. (Alpha or plaintiff), a company which he runs with his son, Robert Abatecola (Robert), was hired by Greenwich as a sub-subcontractor to assist with the masonry work on the project. Fred and Robert allege that Alpha began working in April 2006 and completed its work on the project in October 2006.

On January 25, 2007, by certified mail, plaintiff notified Swan Point of its intention to claim a lien for nonpayment for its services. On March 7, 2007, Alpha recorded a notice of *lis pendens* in the land records for the City of Providence and filed a complaint in the Superior Court seeking to enforce a mechanic's lien of $104,000 for masonry work on the mausoleum. In response, E.W. Burman filed a verified complaint seeking to dismiss and discharge Alpha's lien in accordance with the prompt post-deprivation procedure provided in G.L.1956 § 34-28-17.1.[3]

Before the Superior Court, E.W. Burman argued that the notice of intention was defective on two grounds and that the complaint also was invalid. First, the company faulted Alpha for claiming to have completed work on the project for E.W. Burman when there was no contract between them. Second, E.W. Burman argued that the people who said they had worked on behalf of Alpha were employees of Greenwich and consequently were bound by lien waivers that Greenwich executed in exchange for payment. Lastly, E.W. Burman argued that because the notice of intention was invalid the notice of *lis pendens* and the complaint to enforce the mechanic's lien should be discharged and dismissed, as well.[4] On March 26, 2007, an order was entered directing plaintiff to show cause why the notice of intention, notice of *lis pendens*, and complaint to enforce the mechanic's lien should not be dismissed.

An evidentiary hearing, based on the order to show cause, commenced before the trial justice on April 10, 2007. The evidence consisted of testimony by Burman and others who worked on the project detailing their dealings with members of the Abatecola family. Mr. Burman testified that as the general contractor his company entered into a subcontract for

---

2. Several members of the Abatecola family are involved in this case. The familial relationship is undisputed; John and Fred Abatecola are brothers and Robert Abatecola is Fred's son and John's nephew. The professional relationship between these men is at the heart of the dispute before us. We shall refer to these men by their first names for the sake of clarity, and we intend no disrespect.

3. E.W. Burman maintained that it had standing to apply to the Superior Court for an order to show cause under § 34-28-17.1(a)

because the statute permits "any person in interest, including, but not limited to, an owner or contractor," to apply for an order to show cause, and, according to the terms of its contract with Swan Point, E.W. Burman is responsible for refunding to Swan Point any money paid to discharge a lien.

4. E.W. Burman also argued that the complaint was invalid and void because it failed to describe the alleged work performed, as required by § 34-28-13.

$103,000 with Greenwich to complete the masonry work for the project.[5] The subcontract prohibited Greenwich from assigning or subcontracting any of its work without Burman's written permission. Mr. Burman, Carl Angus (Angus), the project manager for E.W. Burman, and Cornelius DeBoer (DeBoer), the project's architect, all testified that they believed that Fred and Robert worked for John as employees of Greenwich and that none of them had been informed that there was a sub-subcontractor working on the project. When Angus specifically asked John about his relationship with Robert, John explained to him that he was training Robert to take over Greenwich.

E.W. Burman paid Greenwich in full, in accordance with the terms of the fixed-price contract between the companies.[6] In turn, John signed affidavits and waivers of liens on behalf of Greenwich. Mr. Burman testified that the first time he found out that a company other than Greenwich claimed to be involved in the project was when he received Alpha's letter of December 13, 2006, claiming a mechanic's lien. Testimony revealed that by this time, John had moved to Florida and apparently closed his business. Mr. Burman twice wrote to John requesting information about the relationship between Greenwich and Alpha, and John responded that there was "no contract between Alpha Omega and Greenwich Northeast, Inc. (GNI)." John also wrote that "Alpha Omega was working toghether [*sic*] with GNI in a merger process." Mr. Burman also testified that his company had no agreement,

written or oral, with Alpha for the latter company to do any work on the project.

In contrast, Fred and Robert painted a different picture of their involvement with the project. Each testified that Alpha became involved in the project in order to help Greenwich obtain Swan Point's approval of the stonework. Robert testified that he notified Angus and E.W. Burman's site foreman, Fred Corcoran (Corcoran), that Alpha was a sub-subcontractor for the stonework, although he admitted that Alpha did not submit any invoices to E.W. Burman for work done on the project. Further, Fred conceded that Alpha did not have a written contract with Greenwich, or even an agreement with it concerning the price for the work. The evidence disclosed that Alpha operated out of Fred's home and had no vehicles of its own.

On May 21, 2007, in a bench decision, the trial justice made several findings of fact and concluded that there was no probability of a judgment in favor of Alpha. The trial justice found that the contract between E.W. Burman and Greenwich provided that there would be no subcontractors without Burman's approval and that there was no request for such approval. Not only was there no proof of a contractual relationship between Greenwich and Alpha, the trial justice also referred to John's letter to Burman in which he stated that Greenwich and Alpha were pursuing a merger, which he found defeated any suggestion of a subcontract with Alpha. The trial justice found that the contract between E.W. Burman and Greenwich was for a fixed price, and that this fact should

---

**5.** E.W. Burman and Greenwich subsequently agreed to two change orders that expanded the scope of the work to be done by Greenwich and increased the amount of the subcontract to $588,000. The new contract price was negotiated during several meetings between Burman and John, some of which Fred also attended.

**6.** Mr. Burman testified that a percentage of the contract price, totaling approximately $30,000, was retained to pay for repairing work that was improperly done by Greenwich.

have alerted Alpha to make any alleged subcontracts known to E.W. Burman.

The trial justice also found that the testimony of the witnesses who worked for E.W. Burman and Swan Point was more credible than Robert's self-serving declaration that he notified E.W. Burman about Alpha's subcontract. Additionally, the trial justice noted that there was no indicia on the work site suggesting that an entity identified as Alpha Omega Construction, Inc., was doing any work. He concluded that, because there was no subcontract between Greenwich and Alpha, the lien releases executed by Greenwich were binding on Alpha. Finally, he found that there simply was no credible evidence to support Alpha's contention that it was entitled to a mechanic's lien. The trial justice held that any claim for payment that Alpha may have should be brought against Greenwich, and not E.W. Burman.

Based upon the foregoing findings, the trial justice declared that Alpha's notice of intention was invalid and void because the lien was without probability of judgment in favor of the lienor; the court dismissed with prejudice Alpha's complaint to enforce the mechanic's lien. Subsequently, E.W. Burman successfully moved for attorneys' fees under § 34–28–19. An order dismissing Alpha's complaint to enforce the mechanic's lien with prejudice was entered on July 2, 2007, and a judgment awarding attorneys' fees to E.W. Burman was entered on July 12, 2007. Thereafter, Alpha timely filed a notice of appeal.

■■■ On appeal, plaintiff argues that the trial justice's finding that Alpha's personnel were employees of Greenwich was erroneous and contrary to the evidence. Rather, plaintiff contends that Alpha was a sub-subcontractor and, as such, it has a valid mechanic's lien notwithstanding its lack of privity with the property owner. Alternatively, Alpha argues that even if it did not qualify as a sub-subcontractor, its employees have an independent right to assert a mechanic's lien despite the lien waivers signed by Greenwich. The plaintiff also appeals from the award of attorneys' fees.[7]

E.W. Burman responds that the trial justice properly concluded that Alpha's mechanic's lien was without probability of judgment and, based on the evidence presented and his assessment of the credibility of the witnesses, the trial justice's decision to dismiss and discharge Alpha's mechanic's lien also was correct. E.W. Burman also argues that any worker claiming to work on behalf of Alpha was an employee of Greenwich and is bound by the lien waivers that Greenwich executed.

## Standard of Review

■■■ This Court consistently has held that " 'a mechanic's lien proceeding is an equitable in rem proceeding' that is to be 'tried before a justice sitting without a jury.' " *DeSimone Electric, Inc. v. CMG, Inc.*, 901 A.2d 613, 618 n. 5 (R.I.2006) (quoting *Tilcon Gammino, Inc. v. Com-*

---

7. Although Alpha listed the trial justice's award of attorneys' fees as a subject of its appeal and reserved the right to discuss it in later filings, it ultimately failed to develop the argument in any meaningful way. "It is well established that a mere passing reference to an argument is insufficient to merit appellate review." *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1282 n. 11 (R.I.2007) (citing *Wilkinson v. State Crime Laboratory Commission*, 788

A.2d 1129, 1131 n. 1 (R.I.2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.")). Accordingly, we deem this issue not to be appropriately before us, and we decline to address it.

*mercial Associates,* 570 A.2d 1102, 1107 (R.I.1990)); *see also* § 34–28–21. "It is well settled that the findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal absent a record showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Donnelly v. Cowsill,* 716 A.2d 742, 747 (R.I.1998). Moreover, "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Walton v. Baird,* 433 A.2d 963, 964 (R.I.1981). During the fact-finding process, the trial justice may "draw inferences from the testimony of witnesses, and such inferences, if reasonable, are entitled on review to the same weight as his other factual determinations." *Id.*

## Analysis

■ The purpose of the mechanic's lien law is to "afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches." *Gem Plumbing & Heating Co.,* 867 A.2d at 803. The statute has been modified in recent years in order to protect owners and contractors from "the risk of erroneous deprivation" resulting from the filing of an unenforceable mechanic's lien. *Id.* at 811. Section 34–28–17.1(a) grants the owner or contractor a *"prompt* post-deprivation hearing" in the form of an "expedited show-cause proceeding[ ]" to determine whether there is a probability of judgment in favor of the lienor.[8] *Gem Plumbing & Heating Co.,* 867 A.2d at 811. In this case, the trial justice reviewed the evidence and found that there was not a probability of judgment in favor of Alpha. Because we are satisfied that Alpha failed to produce adequate proof upon which a mechanic's lien may be based, we affirm the decision of the trial justice.

■ The most common reason for a party to use the mechanic's lien remedy is because the subcontractor "has not been paid by the general contractor with whom the owner has made an agreement for the overall performance of improvement to his land." *Faraone v. Faraone,* 413 A.2d 90, 92 (R.I.1980). Although the owner may have paid the general contractor, the subcontractor has not received payment for the work or materials. *Id.* In the present case, the record reflects that E.W. Burman, the general contractor, paid Greenwich, the subcontractor, but that Alpha, the purported sub-subcontractor, was not paid. The fact that a subcontractor allegedly was delinquent as opposed to the general contractor is not fatal to the mechanic's lien in question. Rather, this lien

---

8. Section 34–28–17.1 provides in pertinent part:

"(a) If any person in interest, including, but not limited to, an owner or contractor, claims: (1) that any person who has provided labor, materials or equipment or has agreed to provide funding, financing or payment for labor or materials or equipment refuses to continue to provide such funding, financing or payment for labor materials solely because of the filing or recording of a notice of intention; or (2) it appears from the notice of intention that the claimant has no valid lien by reason of the character of or the contract for the labor, materials or equipment and for which a lien is claimed; or (3) that a notice or other instrument has not been filed or recorded in accordance with the applicable provisions of § 34–28–1 et seq.; or (4) that for any other reason a claimed lien is invalid by reason or failure to comply with the provisions of § 34–28–1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor."

must be laid to rest because Alpha failed to establish that it was a sub-subcontractor on the project. The trial justice determined that there was "not a scintilla of evidence to support [the] contention that Alpha was entitled to file its lien" and the record clearly supports this finding.

The contract between E.W. Burman and Greenwich explicitly prohibited Greenwich from subcontracting or assigning any of its work without Burman's written permission. Greenwich never sought permission to engage a sub-subcontractor, nor is there any evidence of a contractual relationship between Alpha and Greenwich. In fact, the principal of Greenwich represented that the two companies were working together on a merger and were not engaged as subcontractor and sub-subcontractor. There were no trucks or uniforms at the worksite to indicate that any company other than Greenwich was doing masonry work on the project. The trial justice credited the testimony that neither Fred nor Robert, both of whom obviously were related to John, disclosed that they were working on behalf of another company. We are satisfied that the trial justice did not overlook or misconceive any material evidence and that his factual findings and credibility determinations clearly support his conclusion that Alpha did not perform work as a sub-subcontractor of Greenwich.

Accordingly, our decision in *Roofing Concepts, Inc. v. Barry*, 559 A.2d 1059 (R.I.1989), in which we declared that a subcontractor need not be in privity with the owner to assert a mechanic's lien, is not pertinent to the present case. In *Roofing Concepts*, there was no contractual provision prohibiting subcontractors, nor was there a dispute that Roofing Concepts, Inc., was in fact a subcontractor. In the present case, Greenwich specifically was prohibited from hiring a sub-subcontractor without written permission from the gen-

eral contractor. Additionally, the trial justice found that Alpha did not perform work on the project as a sub-subcontractor. Thus, our holding in *Roofing Concepts* is of no moment to Alpha's contention in this case.

■ Finally, Alpha's argument that its employees are entitled to a mechanic's lien in their individual capacities is unavailing. The mechanic's lien in this case was filed on behalf of the corporation, Alpha Omega Construction, Inc., and not the individual employees. Section 34–28–4 is quite clear and provides for a strict limitation on the period during which a person or corporation may file a mechanic's lien—within 200 days of completion of the work. There is no evidence that any employee independently filed a mechanic's lien within that period. Thus, we decline to address this issue.

## Conclusion

The trial justice was correct to conclude that Alpha did not perform work as a sub-subcontractor on the project. Although it appears that Alpha could pursue an action against Greenwich, there is no basis for a mechanic's lien against Swan Point. Therefore, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.